[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15647
Non-Argument Calendar
_____

Agency No. A200-638-448


PEDRO MACHADO ALTURO,
GLORIA AMPARO CARRILLO VASCO,
CRISTHIAN DAVID MACHADO CARRILLO,
SERGIO ALEJANDRO MACHADO CARRILLO,

Petitioners,

versus

US ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 21, 2013)

Before TJOFLAT, CARNES, and PRYOR, Circuit Judges.

PER CURIAM:

Pedro Machado Alturo, a Colombian national, petitions for review of a final order of the Board of Immigration Appeals affirming the denial of his application for asylum and withholding of removal under the Immigration and Nationality Act, and withholding of removal under the United Nations Convention Against Torture (CAT).  See 8 U.S.C. §§ 1158(a), 1231(b)(3); 8 C.F.R. § 1208.16(c).[1]  The BIA concluded that Alturo was statutorily ineligible for asylum, withholding of removal, and CAT relief because he provided material support to a designated terrorist organization, the United Self-Defense Forces of Columbia (AUC), in the form of six annual payments of $300 in war taxes, totaling $1,800.  The BIA alternatively found that Alturo's claims for relief failed on the merits because he did not establish past persecution or a well-founded fear of future persecution on account of a statutorily protected ground, or that he would be tortured by or with the acquiescence of Colombian authorities upon return to his native country.

Alturo challenges both conclusions.  He contends that the statutory bar for providing material support to a terrorist organization does not apply because: (1) he made the payments to the Aguilas Negras, or Black Eagles, which is not a designated terrorist organization; (2) the AUC can no longer be designated as a

---

[1] Alturo filed his application on behalf of himself, his wife Gloria Amparo Carrillo Vasco, and his two children, Cristhian David Machado Carrillo and Sergio Alejandro Machado Carrillo.

terrorist organization because it demobilized in 2006; (3) he could not have known that the Aguilas Negras or the AUC were terrorist organizations; (4) the amount of money he provided was de minimis; and (5) he made the payments under duress. Alturo also contends that the BIA erred in alternatively finding that he was not entitled to asylum or withholding of removal because he established that he had, and would be, persecuted on account of his political activities and opinions.

We review administrative factual findings under the deferential substantial evidence test, which requires that we affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Zhou Hua Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1307 (11th Cir. 2013) (quotation marks omitted). Although we review legal questions de novo, we must defer to the BIA's construction of the INA "if the statute is silent or ambiguous with respect to the specific issue before us and the BIA's interpretation is based on a permissible construction of the statute." Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1326 (11th Cir. 2003) (quotation marks omitted).

An alien is inadmissible and ineligible for asylum, withholding of removal, or CAT relief if he has engaged in terrorist activity, which includes committing "an act that the actor knows, or reasonably should know, affords material support" to a

3

terrorist organization.[2]  8 U.S.C. § 1182(a)(3)(B)(iv)(VI); see also id. §§ 1158(b)(2)(A)(v), 1231(b)(3)(B)(iv); 8 C.F.R. § 1208.16(d)(2).   The INA defines a "terrorist organization" as a group so designated by the Secretary of State or an undesignated group that "engages in, or has a subgroup which engages in," terrorist activity.  8 U.S.C. § 1182(a)(3)(B)(vi).  For undesignated terrorist organizations, the material support bar does not apply if the alien "can demonstrate by clear and convincing evidence that [he] did not know, and should not reasonably have known, that the organization was a terrorist organization."  Id. § 1182(a)(3)(B)(iv)(VI)(dd).  There is no comparable exception for designated terrorist organizations.  Id. § 1182(a)(3)(B)(iv)(VI)(cc).

In concluding that Alturo was ineligible for relief under the material support bar, the BIA found that he paid an annual $300 "vacuna," or war tax, to the AUC over a period of six years in exchange for protection from local guerillas, that the amount of funds provided qualified as "material support" within the meaning of the INA, and that there was no exception to the statutory bar for payments made under duress.  The BIA's factual finding that Alturo paid $1,800 to a designated terrorist organization is supported by substantial evidence.  Alturo himself testified

---

[2] Although the material support bar does not preclude the grant of deferral of removal under CAT, as opposed to withholding of removal, Alturo does not contend that he is entitled to that particular form of relief.  See 8 C.F.R. § 1208.17(a) (providing that an alien eligible for CAT protection, but not withholding of removal under CAT, shall be granted deferral of removal).  He has therefore waived the issue.  See Zhou Hua Zhu, 703 F.3d at 1316 n.3.

that, from 2000 through 2006, he made six annual payments of $300 to a

paramilitary organization called the Peasant Self-Defense Group of Magdalena

Medio, which he noted was "the same" as the AUC.[3]  He explained that, in return

for the payments, the AUC promised him protection from local guerillas, though

he feared retribution if he refused to pay as one of his neighbors was killed for not

paying the war tax.

Contrary to Alturo's contention, the fact that the AUC was demobilized in

2006 does not render the material support bar inapplicable.  When Alturo made

those payments, the AUC was active and designated as a Foreign Terrorist

Organization by the United States State Department.  Nor is it relevant whether

Alturo knew, or should have known, that the AUC was deemed a terrorist

organization.  Where the recipient of material support is a designated terrorist

organization, the INA requires only that the alien know, or should know, that his

actions will afford material support to that organization; it does not require any

specific knowledge of the status of the organization.  Compare id. §

1182(a)(3)(B)(iv)(VI)(cc), with § 1182(a)(3)(B)(iv)(VI)(dd).

The BIA's legal determinations that the funds provided by Alturo constitute

"material support" within the meaning of the statutory bar and that the statute does

---

[3] It is not clear from the record whether the Aguilas Negras and the Peasant Self-Defense Group of Magdalena Medio are one and the same, though documents submitted to the BIA appear to suggest that the Aguilas Negras were formed out of the ashes of the AUC following its dissolution in 2006.  It is clear, however, that both organizations are associated with the AUC.

not contain a duress exception are permissible constructions of the INA to which we must defer. The INA broadly defines "material support" to include the provision of "a safe house, transportation, communications, <u>funds</u>, transfer of funds or other material financial benefit, false documentation or identification, weapons . . ., explosives, or training," 8 U.S.C. § 1182(a)(3)(B)(iv)(VI) (emphasis added), and the BIA reasonably concluded that annual payments of $300 over a period of six years was not so insignificant as to fall outside that definition. <u>See</u> <u>Viegas v. Holder</u>, 699 F.3d 798, 803 (4th Cir. 2012) (holding that the payment of monthly dues for four years and the hanging of posters on behalf of a terrorist organization was "material support"); <u>Singh-Kaur v. Ashcroft</u>, 385 F.3d 293, 298–99 (3d Cir. 2004) (noting that "material support" is a broad concept that is not limited to the enumerated examples and deferring to the BIA's conclusion that the "provision of food and setting up tents" qualified as such support).

Likewise, the BIA reasonably concluded that the statutory bar does not exempt material support provided to a terrorist organization under duress. As the BIA aptly noted, the material support bar contains no express duress exception, which stands in marked contrast to a neighboring provision in the INA that includes an explicit involuntariness exception for aliens who have been affiliated with a totalitarian party. <u>See</u> 8 U.S.C. § 1182(a)(3)(D) (barring the admission of aliens who have been affiliated with "the Communist or any other totalitarian

6

party," but expressly exempting those who can establish that the affiliation "was involuntary"). Congress has also enacted a separate waiver provision that vests "sole unreviewable discretion" with the Secretary of State and the Secretary of Homeland Security to waive the bar, provided that the alien has not "voluntarily and knowingly" supported terrorist activities. 8 U.S.C. § 1182(d)(3)(B). In light of these specific features of the INA, every circuit that has addressed the issue has concluded that there is no implied exception to the material support bar for support given involuntarily or under duress, and that an alien's sole recourse in cases of coercion is to seek a waiver from the Secretaries of State or Homeland Security. See Barahona v. Holder, 691 F.3d 349, 355–56 (4th Cir. 2012); Annachamy v. Holder, 686 F.3d 729, 734–35, 740 (9th Cir. 2012). Alturo, in fact, concedes that any such waiver would have to be granted by the appropriate executive branch officials.

Because the BIA reasonably declined to recognize a duress exception to the material support bar, we are bound to defer to its permissible construction of the statute. See Assa'ad, 332 F.3d at 1326. While the result might reasonably be viewed as harsh, we are constrained by the language Congress chose to use and the BIA's reasonable construction of that language. It is up to Congress, not the courts, to correct any perceived inequity.

**PETITION DENIED.**

7