[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14385

_____

Agency No. A077-889-201

HENRY BRAVO BENITEZ,
ROSA DEL CARMEN SALGADO MIRANDA,

Petitioners,

versus

US ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 24, 2013)

Before TJOFLAT and WILSON, Circuit Judges, and PROCTOR,[*] District Judge.

PER CURIAM:

Henry Bravo Benitez (Bravo) and his wife Rosa del Carmen Salgado Miranda (Salgado)[1] petition for review of the final removal order issued by the Board of Immigration Appeals (BIA) on July 31, 2012.  The BIA concluded that Bravo, a native and citizen of Colombia, was ineligible for (1) asylum under the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a); (2) withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); and (3) protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT) under 8 C.F.R. § 208.16(c).  Bravo challenges only the denials of his petitions for asylum and withholding of removal.  For the following reasons, we dismiss Bravo's petition.

## I.    BACKGROUND

From 1997 to 1999, Bravo worked as a supervisory airplane dispatcher for Suramericana Airlines, S.A. in Bogota, Colombia.  His responsibilities included evaluating the weight and balance of an aircraft, calculating the maximum weight a plane could carry, and recording the weight in the plane's manifest.  In December 1997, 12 to 15 armed individuals who identified themselves as guerillas for the

---

[*] Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

[1] Salgado seeks relief only as a derivative beneficiary of her husband.  For purposes of clarity, we will refer to their arguments as Bravo's.

Revolutionary Armed Forces of Colombia (FARC) approached Bravo and demanded to board a plane with their equipment.  The guerillas told Bravo that if he refused, he would be killed.  Bravo warned them that the additional weight would jeopardize the flight's safety, but the guerillas nevertheless boarded the plane.  To conceal their activities, Bravo did not correct the plane's manifest to reflect the additional passengers and cargo.  At some point after the first incident, Bravo reported what had happened to his supervisor, who told him to keep quiet.  During the next two years, always under the threat of death, Bravo dispatched eight to ten flights for FARC members.  When Colombian authorities began investigating some of the suspicious flights, Bravo received a threatening phone call from the FARC, warning him about the consequences should he cooperate with the investigation.  As a result, when Colombian authorities asked Bravo about the disparities between the actual and recorded weights of the planes, he lied and attributed them to changes in temperature.  In June 1999, Bravo quit his job.  Two months later, FARC members ambushed Bravo and his wife while they were stopped in Bravo's car.  The attackers knocked Bravo unconscious and questioned his wife, also an airline dispatcher, about flights, work schedules, and passenger lists.

In November 1999, Bravo and his wife entered the United States as B-2 nonimmigrants.  One year later, Bravo applied to the Department of Homeland

3

Security (DHS) for asylum and withholding of removal, listing Salgado as a derivative applicant. On August 30, 2007, the DHS served Bravo and Salgado each with a notice to appear in immigration court as aliens subject to removal under 8 U.S.C. § 1227(a)(1)(B). In response, Bravo—with his wife as a derivative beneficiary—sought asylum, withholding of removal, and CAT relief.

On May 3, 2011, despite finding Bravo's testimony and evidence credible, the IJ denied all relief and ordered Bravo and Salgado removed to Colombia. The IJ found that because Bravo had provided "material support" to the FARC by acting as a dispatcher for ten flights carrying FARC members and equipment, he was ineligible for asylum under 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). The IJ also found that Bravo's petition for withholding of removal was due to be denied because Bravo's fear of persecution from the FARC lacked a nexus to any protected ground, i.e., his race, religion, nationality, membership in a particular social group, or political opinion. *See* § 1231(b)(3)(A). Bravo appealed, and the BIA affirmed the IJ's decision.

The BIA agreed with the IJ that Bravo had "engaged in terrorist activity" by providing material support to the FARC, triggering the material support bar under § 1182(a)(3)(B)(iv)(VI). In addition, the BIA denied Bravo's petitions on the alternate basis that he did not establish a nexus between a protected ground and any past or potential persecution. This petition followed.

4

## II.  ANALYSIS

Bravo raises three arguments.  First, he insists that he did not provide "material support" to the FARC.  Second, he argues that the BIA erred in concluding that he did not establish a nexus between any persecution and a protected ground.  Finally, Bravo advances a procedural due process argument, contending that the BIA failed to afford him a fair opportunity to obtain a waiver of inadmissibility because the BIA did not analyze his asylum claim after determining that he had provided material support to the FARC.  *See* § 1182(a)(3)(B)(i).  We address each argument in turn.

## A.  Whether Bravo Provided Material Support to a Terrorist Organization

Section 1182(a)(3)(B)(iv)(VI) provides that an alien is ineligible for asylum and withholding of removal if he engages in terrorist activity by:

> commit[ting] an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communication, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training— . . .
> (cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization[.]

Subclause (I) of § 1182(a)(3)(B)(vi) provides that a terrorist organization means an organization "designated under section 1189 of [Title 8]."  The FARC is a "Tier I" foreign terrorist organization because the Secretary of State has

5

designated it as such pursuant to § 1189.  *See* 73 Fed. Reg. 68,489-02 (Nov. 7, 2008).

We begin by noting that Bravo's duress argument was recently foreclosed by this court in *Alturo v. U.S. Attorney General*, 716 F.3d 1310 (11th Cir. 2013) (per curiam).  In *Alturo*, the plaintiff, another Colombian national, argued that the material support bar did not apply to him because any help that he provided to the United Self-Defense Forces of Colombia (AUC) was given under duress.  *Id.* at 1312.  We reasoned that because Congress has "enacted a separate waiver provision that vests 'sole unreviewable discretion' with the Secretary of State and the Secretary of Homeland Security to waive the [material support] bar" so long as the alien's support was not voluntary, we would not read a duress exception into § 1182(a)(3)(B)(iv)(VI).  *Id.* at 1314; *see also Barahona v. Holder*, 691 F.3d 349, 355–56 (4th Cir. 2012); *Annachamy v. Holder*, 686 F.3d 729, 734–35 (9th Cir. 2012).  In addition, the plain language of the material support bar contained no duress exception.  *Alturo*, 716 F.3d at 1314.  Bravo's argument that his support was de minimis rather than material is also without merit.  The plain language of the material support bar lists "transportation" as an example of material support, and Bravo provided the FARC with air transportation.  § 1182(a)(3)(B)(iv)(VI).

## B.  Whether Bravo Was Persecuted on Account of a Protected Ground

Bravo's second argument is that substantial evidence did not support the BIA's finding that he did not meet his burden of establishing past persecution on account of his political opinion or membership in a particular social group.  We review the BIA's finding under the substantial evidence test.  *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).  Under this standard, we must "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. U.S. Att'y Gen.*, 386 F.3d 1022, 1027 (11th Cir. 2004).  As we noted earlier, to establish a claim for asylum, Bravo must show a nexus between past persecution and a protected ground, such as his political opinion or membership in a particular social group.  *See* § 1158(b)(1)(B)(i).

Bravo first contends that he was persecuted on account of his political opposition to the FARC.  He points to his reluctance to assist the organization, and his report of the first incident to his supervisor despite the FARC's threats.  We, however, agree with the BIA that the "FARC's actions against him were aimed at forcing him in his occupation as an airplane dispatcher to assist them in flying cargo and passengers," and not actions taken to persecute him because of his political leanings.  Indeed, most, if not all of the evidence points towards this conclusion.

Nor are we persuaded that the FARC sought to harm Bravo on account of his membership in a particular social group. Bravo argues that "former flight dispatchers" are a particular social group, and that after he resigned he was attacked on account of his membership in the group. Citing our decision in *Castillo-Arias v. U.S. Attorney General*, 446 F.3d 1190 (11th Cir. 2006), the BIA found that Bravo had not established that "former flight dispatchers" were a social group qualifying for protection under the INA, because "former flight dispatchers" are not, as we said in *Castillo-Arias*, people with a "shared characteristic . . . that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.* at 1193 (omission in original) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439, 447 (BIA 1987)).

In *Castillo-Arias*, we adopted the BIA's *Acosta* formulation of what constitutes a "particular social group." *Id.* at 1196. Although former flight dispatchers might, in one sense, have a "shared past experience," we cautioned in *Castillo-Arias* against "rendering 'particular social group' a catch-all for all groups who might claim persecution." *Id.* at 1197. In that case, we held that drug-cartel informants "who remain anonymous are not visible enough to be considered a 'particular social group.'" *Id.* Viewing the record in the light most favorable to

8

the BIA, we agree that "former flight dispatchers" do not have the social visibility to warrant being considered a particular social group. Bravo points to no evidence that a former flight dispatcher would be "highly visible" in the community. *Id.* at 1194 (internal quotation marks omitted). We therefore conclude that because Bravo was not a member of a particular social group, he did not establish a nexus between any persecution and a protected ground.

## C.  Whether Bravo's Due Process Rights Were Violated

Bravo's final argument is that his due process rights were violated because he was deprived of his ability to seek a waiver under § 1182(d)(3)(B)(i). According to current DHS policy, that waiver may only be granted if, the material support bar notwithstanding, the alien would have been eligible for asylum. *See* U.S. Citizenship and Immigration Services, *USCIS Implementation Memorandum* at 4 (May 24, 2007), *available at* http://www.uscis.gov/files/pressrelease /MaterialSupport_24May07.pdf (last visited Aug. 9, 2013) (providing that an exemption will only be considered for an alien who "is otherwise eligible"). Bravo argues that because the BIA never reached the merits of his asylum claim, it deprived him of a fair chance to be eligible for the waiver.

We are aware that this issue has not yet been decided in this circuit, although it was recently addressed by the Seventh Circuit in *FH-T v. Holder*, — F.3d —, No. 12-2471, 2013 WL 3800252, at *11 (7th Cir. July 23, 2013) (holding that there

9

was no evidence that Congress "intended the waiver provision to require [BIA] adjudication of the merits of asylum claims in every case triggering the material support for terrorism bar").  However, we need not reach the issue in light of the fact that the BIA did reach the merits of Bravo's asylum claim.  It is true that the IJ only reached the nexus issue with regard to Bravo's withholding of removal claim, but the BIA explicitly held that Bravo had failed to show a "past persecution or a well-founded fear of future persecution," which is the standard for asylum.  *See Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 964–65 (11th Cir. 2011) (per curiam). It is therefore apparent that the BIA reached the merits of Bravo's asylum claim, and found it wanting.[2]  With that in mind, we leave for another day the decision of whether Bravo's due process rights would have been violated had the BIA failed to reach the merits of his asylum claim.

**PETITION DISMISSED.**

---

[2] As to Bravo's withholding of removal claim, we note that "[w]here an applicant is unable to meet the 'well-founded fear' standard for asylum, [s]he is generally precluded from qualifying for either asylum or withholding of [removal]." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1243 (11th Cir. 2006) (alterations in original) (internal quotation marks omitted).