**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-2839 & 13-1446
_____

LAILA RAJABI,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent


_____

On Petition for Review from the Board of Immigration Appeals
BIA-1 No. A074-761-909
Immigration Judge: The Honorable Robert P. Owens

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 6, 2014

Before: SMITH, SHWARTZ, and SCIRICA, *Circuit Judges*

(Filed: February 3, 2014)


_____

OPINION
_____

SMITH, *Circuit Judge.*

1

## I.

Laila Rajabi petitions for review of a June 15, 2012 order of the Board of Immigration Appeals (C.A. No. 12-2839) affirming the denial of her application for asylum and withholding of removal under the Immigration and Nationality Act (INA), and withholding of removal under the United Nations Convention Against Torture (CAT).[1] *See* 8 U.S.C. §§ 1158(a), 1231(b)(3); 8 C.F.R. §§ 1208.16(c), 1208.17(a). She also petitions for review of the Board's February 4, 2013 order denying her motion to reopen her removal proceedings (C.A. No. 13-1446). These petitions have been consolidated for our review.[2] For the reasons set forth below, both will be denied.

## II.

Rajabi, a native and citizen of Iran, entered the United States in 1996 without proper documentation and was immediately placed in removal proceedings. She promptly filed an application for asylum and withholding of

---

[1]    The BIA's June 15, 2012 order addressed only Rajabi's application for deferral of removal under the CAT. Yet the order incorporated by reference a June 25, 2009 interlocutory decision denying Rajabi's applications for asylum and withholding of removal under the INA. Thus, the BIA's June 15, 2012 order constituted a final order of removal, bringing this matter within our appellate jurisdiction. *See* 8 U.S.C. § 1252(a).

[2]    The BIA had jurisdiction over Rajabi's motion to reopen pursuant to 8 C.F.R. § 1003.2. This Court has jurisdiction to review final orders of the Board, including the denial of a motion to reopen, pursuant to 8 U.S.C. § 1252(a)(1).

deportation under the INA, which was denied by an immigration judge ("IJ") on July 7, 2000.[3] Rajabi appealed to the BIA, who remanded the case to the IJ in 2003, and again in 2005, because tapes were missing from the record. As a result of these decisions, Rajabi's case was heard de novo before a different IJ in 2007.

In 2007, Rajabi once again applied for asylum and withholding of removal under the INA, and also for protection under the CAT.[4] Rajabi's application stated that, beginning in 1995, she was a "student member and a recruiter" for Mojahedin-e Khalq ("MEK"), an organization she claimed was purposed on "replac[ing] the current regime in Iran with a democratic government" and "promot[ing] social welfare."[5] Rajabi asserted that because of her MEK

---

[3]     During the pendency of her removal proceedings, Rajabi met and married her husband, a United States citizen from Iran. Rajabi's husband filed a petition for an adjustment of her status in 1998, and the first IJ to hear her case administratively closed the proceedings pending the outcome of that petition, which was denied on the merits in 1999. This explains the three year gap between the date Rajabi first applied for asylum and the IJ's denial of her application in 2000.

[4]     Relief under the CAT was not available at the time Rajabi filed her first applications for asylum and withholding of removal in 1997.

[5]     Formed in the early 1960s, MEK's origins reflect both Marxist and Islamic influences. U.S. Dep't of State, *Iran; Country Reports on Terrorism*, 2005. In its early days, MEK collaborated with Ayatollah Khomeini in his effort to overthrow the former Shah of Iran. Throughout the 1970s and 1980s, the organization participated in a series of terrorist attacks against the interests of the United States. In view of these actions, the U.S. Department of State added MEK to its list of designated Foreign Terrorist Organizations in October 1997. That designation, however, was removed in September 2012, in light of "MEK's public renunciation of violence, the absence of confirmed acts of terrorism by the MEK for more than a decade, and their cooperation in the peaceful closure of Camp Ashraf, their historic paramilitary base." Supp. A.R. at 19, Media Note,

3

membership she feared being "imprisoned . . . , tortured, raped, and possibly killed" if she returned to Iran. Rajabi claimed that her sister—who was the leader of several MEK cells and involved with a "small military wing" of the organization—was arrested by Iranian police at their parents' home in May 1996. Rajabi alleged that the authorities searched for her as well, and as a result, she has not returned home since the date of her sister's arrest.

Despite the detailed description in her application, Rajabi minimalized her involvement with MEK during her hearing before the IJ. She testified that she was not actually a member of MEK, explaining that at the time she filed her application she was unaware that the group required that an individual be involved for several years before it would grant membership. Further, Rajabi claimed that she participated in MEK for only about six months, during which time she merely distributed pamphlets and assisted several families displaced by the war between Iraq and Iran. Rajabi also testified that she did not know that MEK engaged in violence until after she came to the United States.

The IJ denied Rajabi's application for asylum and withholding of removal in an order dated October 5, 2007. As an initial matter, the IJ found that Rajabi's testimony was not credible, especially as to the "most crucial parts" related to her

---

U.S. Dep't of State, *Delisting of the Mujahedin-e* Khalq (Sept. 28, 2012).

knowledge of MEK and the extent of her involvement with the organization. He noted that Rajabi's application "disclosed a more intimate knowledge of the way MEK worked and its political objectives and militant capacities" than she professed in her oral testimony. He also disbelieved her assertion that she did not know about MEK's violent activities, particularly considering her sister's leadership role and Rajabi's mention in her application of the organization's military branch.

The IJ additionally concluded that Rajabi was statutorily ineligible for asylum, withholding of removal, and CAT relief because, by distributing literature and recruiting individuals to join MEK, Rajabi had provided material support to a Tier III terrorist organization. *See* 8 U.S.C. §§ 1182(a)(3)(B)(iv)(VI)(dd), (vi)(III). In determining that MEK was a Tier III terrorist organization, the IJ noted that the organization's history is marked by anti-Western activity. Indeed, during the 1970s, MEK's members staged terrorist attacks inside Iran, assassinated at least six American citizens, supported the takeover of the U.S. Embassy, and opposed the release of American hostages. *See People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 20 (D.C. Cir. 1999) (quoting CIA Intelligence Research Paper dated July 1993). In light of these actions, the U.S. State Department designated MEK as a Tier I terrorist organization in 1997, just months after Rajabi

5

arrived in the United States. *See* 8 U.S.C. §§ 1182(a)(3)(B)(vi)(I), 1189. Although MEK was not listed as a Tier I terrorist organization while Rajabi was offering her support, the IJ concluded that, given the organization's nefarious past, it was most certainly a Tier III terrorist organization before its official designation.

Despite concluding that Rajabi was statutorily ineligible for withholding of removal under the CAT for engaging in terrorist activities, the IJ nonetheless granted her deferral of removal under 8 C.F.R. § 1208.17(a).[6] The IJ reasoned that because Rajabi would be required to submit her deportation order to Iranian authorities, the authorities would be notified about her previous MEK involvement. He thus found that "it is more likely than not that upon her arrival [in Iran], [Rajabi] will be detained and subjected to torture by the Iranian government."

The Department of Homeland Security and Rajabi both appealed to the BIA. The Board affirmed the IJ's adverse credibility determination and his finding that Rajabi was statutorily barred from asylum and withholding of removal as an alien who participated in terrorist activities. The BIA, however, vacated the IJ's decision to grant deferral of removal under the CAT because the IJ's order was "unclear as

---

[6]     The IJ purported to grant Rajabi CAT protection under 8 C.F.R. § 1208.16(a). This regulation, however, provides for *withholding* of removal, a form of relief that is not available to aliens who have provided material support to a terrorist organization. The BIA, therefore, appropriately understood the immigration judge to have intended to grant *deferral* of removal under 8 C.F.R. § 1208.17(a).

to what evidence supports the finding of a clear probability of torture and whether each 'link' in the chain of events leading to her torture was demonstrated to be more likely than not."

On remand, the IJ determined that Rajabi failed to establish that she was entitled to deferral of removal under the CAT, in part because she did not provide sufficient testimony or other evidence to prove that it was more likely than not that the Iranian government would identify her as a political opponent. On June 15, 2012, the BIA affirmed the IJ's decision and dismissed her appeal. Rajabi timely petitioned this Court for review.

While her petition for review was pending, Rajabi filed a motion to reopen her removal proceedings based on the fact that the Secretary of State had decertified MEK as a Tier I terrorist organization on September 28, 2012. The BIA denied the motion to reopen on February 4, 2013. The Board stated that the official designation as a terrorist organization does not determine Rajabi's removability, particularly where her removal was based on a finding that MEK was a Tier III terrorist organization at the time of Rajabi's participation. Further, the BIA noted that Rajabi's previous applications for relief were denied on the independent ground that her testimony lacked credibility. Rajabi timely petitioned for review of the denial of her motion to reopen. The two petitions have been consolidated for

our review.

III.

We "review the administrative record on which the final removal order is based." *Li Hua Yuan v. Att'y Gen. of the U.S.*, 642 F.3d 420, 425 (3d Cir. 2011). Where the BIA's decision affirms and specifically references the IJ's decision, our review includes the referenced portions of the IJ's decision. *Id.* "Our review of factual findings, including findings [related to] persecution and fear of persecution, is for substantial evidence, which means we must uphold findings of fact unless the record evidence compels a contrary finding." *Id.* (citing *Sandie v. Att'y Gen. of the U.S.*, 562 F.3d 246, 250 (3d Cir. 2009)). We review legal conclusions *de novo. Id.*

Rajabi's primary contention, with respect to both her motion to reopen and her application for asylum and withholding of removal, is that the Secretary of State's September 2012 decision to delist MEK as a Tier I terrorist organization somehow commands a different outcome in her removal proceedings. While the decision to remove MEK from the list of Tier I terrorist organizations may reflect the United States' current perception of the organization, we fail to see how this has any bearing on whether MEK was a terrorist organization at the time of Rajabi's involvement.

Under our immigration laws, an alien is inadmissible and ineligible for

8

asylum, withholding of removal, or CAT relief if she "has engaged in a terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(I), which includes committing "an act that the actor knows, or reasonably should know, affords material support" to a terrorist organization. *Id.* § 1182(a)(3)(B)(iv)(VI)(cc), (dd); *see also id.* § 1158(b)(2)(A)(v); 8 C.F.R. § 1208.16(d)(2). The INA defines a "terrorist organization" as a group so designated by the Secretary of State (a "Tier I" organization), 8 U.S.C. § 1182(a)(3)(B)(vi)(I), or as an undesignated group that "engages in, or has a subgroup which engages in," terrorist activity (a "Tier III" organization). *Id.* § 1182(a)(3)(B)(vi)(III).[7] To be sure, providing material support to a terrorist organization—whether Tier I or Tier III—precludes an alien from obtaining protection under our immigration laws.

Although MEK was not designated as a Tier I terrorist organization until 1997 (just after Rajabi arrived in the United States), the IJ concluded that, given its history of violent anti-Western conduct throughout the 1970s and into the 1990s, MEK was nonetheless a Tier III organization at the time Rajabi provided material

---

[7]     For our purposes, there is only one distinguishing feature between Tier I and Tier III organizations: for undesignated Tier III organizations, the material support bar does not apply if the alien "can demonstrate by clear and convincing evidence that [she] did not know, and should not reasonably have known, that the organization was a terrorist organization." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd). The IJ concluded that, given MEK's long history as an organization and her sister's leadership role, Rajabi could not demonstrate that she should not reasonably have known that MEK was involved in terrorist activities. Rajabi does not challenge this finding in her petition for review.

support in 1995.[8] Rajabi, however, contends that she should not be disqualified based on her past support of MEK. She argues that the statutory definition for a Tier III terrorist organization uses present tense language, and thus the material support bar should not apply where the supported organization is no longer actively engaged in terrorist conduct.

Rajabi's position finds no support in either the plain language of the statute or the statutory context. Importantly, the operative provision of the statute that directly addresses an alien's eligibility for relief is plainly phrased in the past tense, stating that an alien is inadmissible if she "has engaged in a terrorist activity." 8 U.S.C. § 1182(a)(3)(B)(i)(I). This language is clearly directed both at past conduct and ongoing behavior. Our reading is bolstered by the fact that the PATRIOT Act—which amended the INA to add restrictions for aliens who previously engaged in terrorist activities—includes a retroactivity provision that states that the law applies to all "actions taken by an alien before, on, or after [the date of enactment]." USA PATRIOT Act of 2001, Pub. L. No. 107-56, Title IV, §§ 411(c)(1)(A), 115 Stat. 272, 348. Indeed, the authorization of retroactive application would have no function if not to reach past conduct.

The use of the present tense in the definition of a Tier III organization does

---

[8] Rajabi has not challenged the IJ's conclusion that distributing literature and recruiting members constitutes "material support." *See* 8 U.S.C. § 1182(a)(3)(B)(iv)(V).

not alter our conclusion. Indeed, that definition includes any "group of two or more individuals . . . which *engages in* [terrorist activity]." 8 U.S.C. § 1182(a)(3)(B)(iv) (emphasis added). But here, the term "engages in" refers to the conduct of the organization, not the individual alien's actions. It describes the acts the organization must have undertaken at the time the support was given in order for the alien to be deemed inadmissible. There is no basis for concluding this language was intended to restrict the application of the INA's disqualification provisions to aliens actively engaged in ongoing terrorist activities.

Furthermore, our sister circuits that have considered the issue agree that an alien's past support to an organization that qualified as a "terrorist organization" at the time the support was rendered precludes that individual from relief under our immigration laws. *See, e.g.*, *Alturo v. U.S. Att'y Gen.*, 716 F.3d 1310, 1313 (11th Cir. 2013) ("[T]he fact that the AUC was demobilized in 2006 does not render the material support bar inapplicable. When Alturo made those payments, the AUC was active and designated as a Foreign Terrorist Organization . . . ."); *Khan v. Holder*, 584 F.3d 773, 777 (9th Cir. 2009) ("[I]f an alien 'has engaged in a terrorist activity' under § 1182(a)(3)(B)(iv) at any time, he is ineligible for both asylum and withholding of removal. It does not matter that the alien ceased participation in terrorist activity at some point before seeking admission to or relief in the United

11

States."). Rajabi has not identified any case that holds to the contrary.

For these reasons, we cannot accept Rajabi's argument that the State Department's decision to delist MEK as a terrorist organization compels a different outcome in her quest for asylum, withholding of removal, or CAT relief. The IJ appropriately determined that MEK was a Tier III terrorist organization at the time of Rajabi's involvement in 1995. Also, the IJ did not err when he concluded that, by providing material support to MEK at that time, Rajabi is ineligible for protection under United States immigration laws. Rajabi's consolidated petitions for review will be denied.