[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10229

_____

Agency No. A098-548-548

JUAN CARLOS HINCAPIE-ZAPATA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 13, 2020)

Before WILLIAM PRYOR, Chief Judge, TJOFLAT and HULL, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

Juan Carlos Hincapie-Zapata petitions for review of a final order of removal

from the Board of Immigration Appeals. The Board denied Hincapie-Zapata's

application to adjust his status to lawful permanent resident because it concluded that he provided "material support" to a terrorist organization, which rendered him inadmissible. *See* 8 U.S.C. § 1182(a)(3)(B)(i)(I), (iv)(VI). Hincapie-Zapata argues that we should reverse that decision because his $100 payment to the Fuerzas Armadas Revolucionarias de Colombia was made under duress and was insignificant. Because binding precedent forecloses the former argument and the statute's text forecloses the latter, we deny the petition.

## I. BACKGROUND

In 2001, Hincapie-Zapata owned a restaurant in Colombia, where he sometimes hosted political meetings in support of the Liberal Party. One day, three members of the Fuerzas Armadas Revolucionarias de Colombia entered Hincapie-Zapata's restaurant and "told him that it would cost money for him to safely run his business." Hincapie-Zapata "felt threatened," so he gave the guerillas "200,000 Colombian pesos, the equivalent of approximately $100 at the time." The guerillas told Hincapie-Zapata that they expected monthly payments, so he fled town. Hincapie-Zapata later learned that some guerillas returned to his restaurant with a warning "that he would have to answer about his absence."

On May 18, 2004, Hincapie-Zapata entered the United States as a nonimmigrant visitor with permission to remain until November 17, 2004. Before that deadline, he applied for asylum and withholding of removal. *See* 8 U.S.C.

2

§§ 1158(a), 1231(b)(3)(A). Because Hincapie-Zapata remained in the United States past November 17, 2004, without permission, the Department of Homeland Security issued him a notice of removal in 2008. *See id.* § 1227(a)(1)(B).

Hincapie-Zapata then married a United States citizen. After his wife successfully filed an I-130 Visa Petition on his behalf, Hincapie-Zapata filed an I-485 application to adjust his status to lawful permanent resident. *See* 8 U.S.C. § 1255(a). An immigration judge granted the application, over the government's objection that Hincapie-Zapata provided "material support" to a terrorist organization through his single payment to Fuerzas Armadas Revolucionarias de Colombia. The immigration judge ruled the material-support bar did not apply because Hincapie-Zapata made the payment under duress.

The government appealed that decision. It argued that there was no "duress" or "de minimis" exception to the material-support bar. *See id.* § 1182(a)(3)(B)(iv)(VI). The Board, without answering these questions, remanded because the immigration judge had failed to provide a full analysis of his findings of fact and conclusions of law.

The immigration judge again granted the application. The immigration judge explained why section 1182(a)(3)(B)(i)(I) did not bar the admission of an immigrant who provided material support under duress. He also concluded that Hincapie-Zapata's one payment was de minimis in any event.

The government again appealed, and the Board sustained its appeal. The Board concluded that the single $100 payment constituted material support rendering Hincapie-Zapata inadmissible, and it concluded that the material-support bar made no exception for duress or for de minimis support.

The Board then remanded for the immigration judge to consider Hincapie-Zapata's applications for asylum and withholding of removal and to make a final determination on removability.  After Hincapie-Zapata withdrew those applications, the immigration judge ordered Hincapie-Zapata removed. Hincapie-Zapata appealed the removal order and asked the Board to reconsider its previous decision. The Board dismissed the appeal. It maintained its previous decision because no binding authority called it into question, and it concluded that $100 constituted significant support in any event.

## II. STANDARDS OF REVIEW

"When the [Board] issues its own opinion, we review only the decision of the [Board], except to the extent the [Board] expressly adopts the [immigration judge's] decision." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230–31 (11th Cir. 2007) (alteration adopted) (internal quotation marks omitted). Although the Board's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), "[w]e review the [Board's] statutory interpretation *de novo*." *Quinchia v. U.S. Att'y Gen.*,

552 F.3d 1255, 1258 (11th Cir. 2008) (internal quotation marks omitted). So we independently examine the statute to determine if it answers the question presented. *See Arevalo v. U.S. Att'y Gen.*, 872 F.3d 1184, 1188 (11th Cir. 2017). If it does, we apply the statute and determine whether the decision complies with the statutory text. *Id.*

If "the statute is silent or ambiguous with respect to the specific issue," we afford some level of deference to the Board's decision and evaluate whether it permissibly construed the statute. *Quinchia*, 552 F.3d at 1258 (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984)). We afford *Chevron* deference to the Board's precedential decisions—that is, if the decision we are reviewing is precedential, if it rests on precedential authority from the Board or a federal court, or if the Board later issued a precedential decision on the matter. *See id.* at 1258–59 (affording *Chevron* deference to a later-issued precedential decision of the Board).  If the Board's decision was issued by a single member and did not rely on a precedential decision and the Board has not since issued a precedential decision, then we can either afford *Skidmore* deference or remand to the Board to decide the issue in a binding decision. *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

A single judge issued the decision of the Board concerning Hincapie-Zapata. When concluding that no duress exception exists, the Board relied both on its

5

precedential decision in *Matter of M-H-Z-*, 26 I. & N. Dec. 757 (B.I.A. 2016), and on our precedential decision in *Alturo v. U.S. Att'y Gen.*, 716 F.3d 1310 (11th Cir. 2013). Although it did not rely on any precedential authority when concluding that no de minimis exception exists, the Board later issued a precedential decision reaching that same conclusion. *See Matter of A-C-M-*, 27 I. & N. Dec. 303, 304–06 (B.I.A. 2018). So, if the statute is silent or ambiguous, we will afford *Chevron* deference to the conclusions that no duress or de minimis exceptions exist.

## III. DISCUSSION

"Any alien who . . . has engaged in a terrorist activity . . . is inadmissible." 8 U.S.C. § 1182(a)(3)(B)(i)(I). Under section 1182, "the term 'engage in terrorist activity'" includes the provision of funds to a terrorist organization:

> As used in this chapter, the term "engage in terrorist activity" means, in an individual capacity or as a member of an organization— . . . to commit an act that the actor knows, or reasonably should know, *affords material support, including* a safe house, transportation, communications, *funds*, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training—
>
> > (aa) for the commission of a terrorist activity;
> >
> > (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;
> >
> > (cc) to a [Tier I or II] terrorist organization . . . or to any member of such an organization; or
> >
> > (dd) to a [Tier III] terrorist organization . . . or to any member of such an organization . . . .

*Id*. § 1182(a)(3)(B)(iv)(VI) (emphases added). The Secretary of State designated the Fuerzas Armadas Revolucionarias de Colombia a Tier I terrorist organization. *Id.* §§ 1182(a)(3)(B)(vi)(I), 1189; *Redesignation of Foreign Terrorist Organization*, 66 Fed. Reg. 51088, 51089 (Oct. 5, 2001).

Hincapie-Zapata argues that the material-support bar does not apply to him because he provided the Fuerzas Armadas Revolucionarias de Colombia funds under duress and because $100 does not constitute "material support." But we disagree. Our precedent establishes that no duress exception exists. And the statutory text establishes that any provision of funds categorically qualifies as material support.

### A.  Our Precedent Establishes No Duress Exception Exists.

Our decision in *Alturo v. U.S. Att'y Gen.*, 716 F.3d 1310, forecloses Hincapie-Zapata's argument that the material-support bar does not apply to him because he paid the $100 under duress. In *Alturo*, we held that the Board "reasonably concluded that the statutory bar does not exempt material support provided to a terrorist organization under duress." *Id.* at 1314 (applying *Skidmore* deference to the Board's nonprecedential decision); *see also M-H-Z-*, 26 I. & N. Dec. at 759–64 (concluding, in a precedential decision, that no duress exception exists based on reasons similar to those we approved in *Alturo*). That decision aligns with the decision of every other circuit to answer the question. *Alturo*, 716

F.3d at 1314; *see also Hernandez v. Sessions*, 884 F.3d 107, 110–12 (2d Cir. 2018); *Sesay v. Att'y Gen. of U.S.*, 787 F.3d 215, 222–24 (3d Cir. 2015); *Barahona v. Holder*, 691 F.3d 349, 353–56 (4th Cir. 2012); *Rayamajhi v. Whitaker*, 912 F.3d 1241, 1244 (9th Cir. 2019). We are bound by the holding of *Alturo*, so we deny the petition on this point.

B. *Hincapie-Zapata's Provision of "Funds" Qualifies as Material Support.*

As an initial matter, Hincapie-Zapata incorrectly argues that our decision in *Alturo* "implicitly recognized" that material support must be "significant." In addition to addressing whether a duress exception exists, *Alturo* confronted whether the Board correctly concluded that an alien's provision of $1,800 to a terrorist organization constituted material support. 716 F.3d at 1314. *Alturo* concluded only that the Board "reasonably concluded that annual payments of $300 over a period of six years was not so insignificant as to fall outside [the] definition" of material support. *Id.* We undertook no analysis of the statutory text or the Board's reasoning in concluding that $1,800 constituted material support. *Id.* (stating that section 1182(a)(3)(B)(iv)(VI) "broadly defines 'material support' to include the provision of . . . *funds*"). *Alturo* held only that the Board did not err on those facts in concluding that $1,800 constituted material support. *Id.*

Hincapie-Zapata's argument that the amount of "funds" must be "significant" fails because the statute unambiguously states that the provision of

any "funds" constitutes "material support." Whatever else "material support" might mean, we are certain that it at least "includ[es] . . . funds." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI); *accord Rayamajhi*, 912 F.3d at 1244–45. "The verb *to include* introduces examples .°.°.°." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 15, at 132 (2012). That is, although the "including" clause does not list everything that qualifies as "material support," it lists examples that do qualify. *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (explaining that an "including" clause introduces "illustrative application[s] of the general principle"); Scalia & Garner, *Reading Law* § 15, at 132 n.1 ("*[I]nclude*" means the "whole" "contain[s] [the listed examples] as a part or member." (internal quotation marks omitted)). So the provision of "funds" is an example of "material support." And "funds" means "[m]oney or other assets." *Funds*, *Black's Law Dictionary* (7th ed. 1999); *accord Funds*, *Black's Law Dictionary* (11th ed. 2019) (same). Because the text contains no language qualifying the amount of "money" necessary to constitute "funds," the ordinary meaning establishes that any provision of "money" qualifies as "material support." *Accord Rayamajhi*, 912 F.3d at 1245.

To be sure, the use of "including" does not always mean that "anything that *follows*" it "must necessarily be a subset of whatever *precedes* it." *Massachusetts v. E.P.A.*, 549 U.S. 497, 556–57 (2007) (Scalia, J., dissenting). Sometimes the

listed examples "are broader than the general category" and need to be "limited in [the] light of that category." *Id.* For example, the "phrase 'any American automobile, including any truck or minivan,' would not naturally be construed to encompass a foreign-manufactured truck or minivan." *Id.* (alteration adopted) (internal quotation marks omitted).

The rule, not the exception, applies here. The listed examples of "material support" are not overbroad. Indeed, many of the listed examples—safe houses, false documentation, weapons, explosives, and training—are the kinds of support one would naturally think of as material. So context suggests that the general understanding of "including" applies. *See* Scalia & Garner, *Reading Law* § 24, at 167 ("Context is a primary determinant of meaning.").

The use of the phrase "other material financial benefit" confirms that "funds" are always "material support." Material support "includ[es] a safe house, transportation, communications, funds, transfer of funds or *other material* financial benefit, false documentation or identification . . . ." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI) (emphasis added). The phrase "other material financial benefit" appears in a single comma clause with "transfer of funds." *See* Scalia & Garner, *Reading Law* § 17, at 140 ("Words are to be given the meaning that proper grammar and usage would assign them."). Someone who either "transfer[s] funds" or "transfer[s] . . . *other* material financial benefit[s]" affords material support. 8

10

U.S.C. § 1182(a)(3)(B)(iv)(VI) (emphasis added). The use of the word "other" tells us that "funds" are one kind of "material financial benefit," *see* Scalia & Garner, *Reading Law* § 31, at 195–98, and "funds" are categorically "material support." *Rayamajhi*, 912 F.3d at 1245 (explaining that "the phrase 'other material financial benefit' . . . relates only to 'transfer of funds' and suggests that 'funds' are material per se").

Any other reading of the statute would render that second use of "material" superfluous. If each enumerated example were broad enough to include things that are not "material support," then we would evaluate each example for materiality. And if Congress meant for us to evaluate each enumerated example for materiality, then there would have been no reason to include "material" in "other material financial benefit." It would be treated like the other examples and evaluated for materiality as a matter of course. The second use of "material" would be superfluous under this interpretation. But we can avoid rendering the second use of "material" superfluous by reading the statute as requiring a materiality analysis only for "other . . . financial benefit[s]" and not for the other enumerated examples. *See* Scalia & Garner, *Reading Law* § 26, at 176 ("[C]ourts [should] avoid a reading that renders some words altogether redundant.").

Hincapie-Zapata provided material support under the unambiguous meaning of section 1182(a)(3)(B)(iv)(VI). Because he gave money to known terrorists, he

11

afforded "funds." Because he afforded "funds," he afforded "material support."

*Accord Rayamajhi*, 912 F.3d at 1245 (concluding that $50 qualified as "material

support"). The Board correctly dismissed his appeal.

## IV. CONCLUSION

We **DENY** the petition.

HULL, Circuit Judge, concurring:

I concur fully in Sections I, II, and III.A of the majority opinion.  With respect to Section III.B, I concur in the majority's conclusion that, under the plain and unambiguous text of 8 U.S.C. § 1182(a)(3)(B)(iv)(VI), the provision of any "funds" constitutes "material support."  I agree with the majority that (1) "[b]ecause [Hincapie-Zapata] gave money to known terrorists, he afforded 'funds,'" and (2) "[w]hatever else 'material support' might mean, we are certain that it at least 'include[s] . . . funds."  (Maj. Op. at 9, 12)  Congress has expressed its clear and unambiguous intent that "funds" knowingly provided to a terrorist organization constitute material support.  And, because the statute is clear, we must enforce its plain terms.[1]  Therefore, the Board of Immigration Appeals correctly concluded that Hincapie-Zapata's admitted payment of $100 to the FARC constituted material support, and the Board correctly dismissed his appeal.

---

[1] I also agree with the majority that our decision in Alturo v. United States Attorney General, 716 F.3d 1310 (11th Cir. 2013), held only that the Board did not err on those facts in concluding that an alien's provision of $1,800 to a terrorist organization constituted material support.

13