[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-11354

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

STANLEY WINTFIELD ROLLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cr-20869-PCH-1

_____

Before WILSON, JORDAN, and BRASHER, Circuit Judges.

WILSON, Circuit Judge:

Stanley Wintfield Rolle appeals the district court's denial of his motion to dismiss the indictment for failure to state a crime. In his motion, Rolle argues that 8 U.S.C. § 1324(a) does not apply extraterritorially. We affirm the district court's denial of Rolle's motion to dismiss and hold that §§ 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I), and (a)(2)(B)(ii) apply to his extraterritorial conduct.

## I.    BACKGROUND

On October 24, 2018, United States Coast Guard and Customs and Border Protection officers (collectively, officers) detected a 25-foot boat in United States territorial waters, traveling west toward Miami, Florida. The boat was in the United States contiguous zone, about 19 nautical miles from the United States coast, when the officers spotted it. Due to its erratic travel patterns, the officers pursued the boat as it headed east. They noticed the boat riding low in the water (indicating a heavy load), multiple people on deck, and an expired Florida registration number on the outer hull. The officers apprehended the boat about 20 nautical miles off the coast of Bimini, Bahamas.

On the boat they found 16 individuals whom Rolle had picked up in Bimini. The officers also found $23,400 in Rolle's possession. Rolle said he was working for a man in Bimini who had given him the money, a GPS, and instructions to take the boat and the individuals toward the United States border. There, Rolle was

19-11354                Opinion of the Court                3

to meet another boat, onto which he would transfer the individuals and the money.  None of the 16 individuals had permission to enter the United States.

In November 2018, the government filed an indictment in the Southern District of Florida charging Rolle with one count of conspiracy to encourage and induce aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); 16 counts of encouraging and inducing aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv); 16 counts of bringing aliens to the United States for commercial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); and one count of conspiracy to allow, procure, and permit aliens to enter the United States, in violation of 8 U.S.C. § 1327.  Rolle pled not guilty.  In December 2018, the government filed a superseding indictment with the same charges.[1]

Rolle filed a motion to dismiss the superseding indictment, arguing that it failed to state a crime because his conduct occurred outside the United States.  The district court denied his motion, finding that the charging statutes apply extraterritorially.  After a two-day trial, the jury found Rolle guilty on all counts in violation of § 1324, but not the count in violation of § 1327.  The district court sentenced Rolle to a term of 60 months' imprisonment and three years' supervised release.  This appeal followed.

---

[1] The superseding indictment only modified Rolle's name.

## II.    STANDARD OF REVIEW

We review the district court's denial of a motion to dismiss an indictment for an abuse of discretion. *United States v. Farias*, 836 F.3d 1315, 1323 (11th Cir. 2016). We review whether a statute applies extraterritorially de novo. *United States v. Obando*, 891 F.3d 929, 933 (11th Cir. 2018).

## III.    DISCUSSION

Rolle argues we should reverse the district court and vacate his convictions because his conduct occurred outside the United States, and the statutes under which he was charged do not apply extraterritorially. Because Rolle was acquitted of the § 1327 charge, we examine only whether §§ 1324(a)(1)(A)(iv), (1)(A)(v)(I), and 2(B)(ii) apply extraterritorially—an issue of first impression in our circuit.

Section 1324(a)(1)(A) creates criminal penalties for anyone who

> (iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or

> (v)(I) engages in any conspiracy to commit any of the preceding acts . . .

8 U.S.C. § 1324(a)(1)(A). Section 1324(a)(2)(B) provides:

> Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien [shall] . . .
>
> (B) in the case of . . .
>
> (ii) an offense done for the purpose of commercial advantage or private financial gain . . .
>
> be fined under Title 18 and shall be imprisoned . . .

*Id.* § 1324(a)(2)(B)(ii).

Generally, courts presume that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *United States v. Belfast*, 611 F.3d 783, 811 (11th Cir. 2010) (quoting *Nieman v. Dryclean U.S.A. Franchise Co.*, 178 F.3d 1126, 1129 (11th Cir. 1999)). Whether Congress intended a statute to apply extraterritorially is a question of statutory interpretation. *United States v. MacAllister*, 160 F.3d 1304, 1307 (11th Cir. 1998) (per curiam). One purpose of the presumption against extraterritoriality is to avoid clashes between the laws of the United States and the laws of other nations. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013). But the presumption applies "across the board, 'regardless of whether there is a risk of conflict between the American statute and a foreign law.'" *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 336

(2016) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)).

There are two approaches to analyzing extraterritoriality in the Supreme Court's precedents: one is set forth in *United States v. Bowman*, 260 U.S. 94 (1922), and the other is found in the more recent *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), and its progeny. *See RJR Nabisco*, 579 U.S. at 337; *Kiobel*, 569 U.S. at 115–16. The parties dispute the continued vitality of *Bowman* in light of *Morrison* and its progeny. We conclude that *Bowman* survives *Morrison* and that, applying *Bowman*, §§ 1324(a)(1)(A)(iv), (1)(A)(v)(I), and (2)(B)(ii) apply extraterritorially.

The *Bowman* Court held that the presumption against extraterritoriality does not apply "to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated . . . ." 260 U.S. at 98. The Supreme Court carved out this exception because it recognized that, for some criminal offenses, "limit[ing] their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds . . . ." *Id.*

Our court has long recognized *Bowman* as establishing "the rule that Congress need not expressly provide for extraterritorial application of a criminal statute if the nature of the offense is such that it may be inferred." *MacAllister*, 160 F.3d at 1307–08; *see also*

*Belfast*, 611 F.3d at 813–14; *United States v. Frank*, 599 F.3d 1221, 1230 (11th Cir. 2010); *United States v. Plummer*, 221 F.3d 1298, 1304–05 (11th Cir. 2000); *United States v. Baker*, 609 F.2d 134, 136–37 (5th Cir. 1980); *United States v. Perez-Herrera*, 610 F.2d 289, 290–92 (5th Cir. 1980).[2]

We hold that we may infer the extraterritorial application of the § 1324(a) subsections under which Rolle was charged. First, the subsections—which prohibit encouraging, inducing, or bringing aliens into the United States—target conduct that can take place outside the United States. Second, the nature of the offenses is such that limiting them to the United States would greatly "curtail the scope and usefulness of the statute." *Bowman*, 260 U.S. at 98.

## A.    The Supreme Court Has Not Overturned Bowman

Rolle argues the Supreme Court's decisions in *Morrison*, *Kiobel*, and *RJR Nabisco* have abrogated—or have at least undermined—*Bowman*, so we may not infer extraterritoriality but must instead apply the presumption against it "across the board."

We disagree. The Supreme Court did not indicate in *Morrison*, *Kiobel*, nor *RJR Nabisco* that *Bowman* has been overturned, and it is not our prerogative to overrule the Supreme Court. *See Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1161 (11th Cir. 2021)

---

[2] All decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

("[O]nly the Supreme Court may overturn its precedents . . . ."). Unless the Supreme Court overturns *Bowman*, it remains binding. *Motorcity of Jacksonville, Ltd. v. Se. Bank N.A.*, 120 F.3d 1140, 1143 (11th Cir. 1997) (en banc) ("The courts of appeals must follow Supreme Court precedent that has 'direct application' in a case, even if it appears that the reasoning of the Supreme Court precedent has been rejected in other cases." (quoting *Rodriquez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989))).

Moreover, under the prior-precedent rule, we are bound by our circuit's own precedents interpreting and applying *Bowman*. *Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018). Therefore, we reject Rolle's argument that *Morrison*, *Kiobel*, and *RJR Nabisco* have abrogated our caselaw applying *Bowman*, which, notably, includes caselaw postdating and citing *Morrison*. *See Belfast*, 611 F.3d at 811.

### B.    Extraterritorial Application of § 1324(a) May Be Inferred

Having clarified that *Bowman* remains binding law, we must now answer whether § 1324(a)'s scope and usefulness would be greatly limited if the statute were restricted to the territorial United States. *Bowman*, 260 U.S. at 98. We answer in the affirmative.

Section 1324 is an immigration statute that creates criminal penalties for, among other conduct, knowingly committing, or attempting to commit, the following offenses: bringing an alien to the United States; concealing, harboring, or shielding from

detection an alien in the United States; encouraging or inducing an alien to come to the United States; or engaging in a conspiracy to commit, or aiding or abetting, any of these offenses.[3]  8 U.S.C. §§ 1324(a)(1)(A)(i)–(v).  The statute also imposes a fine and term of imprisonment for knowingly bringing, or attempting to bring, an alien to the United States for financial gain.  *Id.* § 1324(a)(2)(B)(ii).

By creating criminal penalties for such conduct, Congress sought to deter people from helping unauthorized aliens enter or remain in the United States illegally.  Given the nature of illegal immigration, much of the conduct under the statute is likely to occur beyond, at, or near our borders.  This strongly suggests that Congress intended the statute to apply to extraterritorial conduct.  *See, e.g.*, *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004) ("This contextual feature of § 1324(a) establishes that it is fundamentally international, not simply domestic, in focus and effect.").  Much of the conduct is also likely to occur in foreign countries, especially in the initial stages of an alien-smuggling operation.

For example, a person in a foreign country could encourage an alien to enter the United States and then attempt to bring the

---

[3] The statute also creates criminal penalties for anyone who knowingly "transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise."  8 U.S.C. § 1324(a)(1)(A)(ii).  We express no opinion on this subsection.  Our decision addresses only the extraterritorial application of the subsections under which Rolle was convicted.

alien into the country—direct violations of § 1324(a)(1)(A)(i) and (iv)—but the plot could be intercepted before the perpetrator and the alien reach the United States border.  If § 1324(a) applied only domestically, the government would not be able to prosecute the exact conduct Congress intended to reach in creating § 1324.  *See Delgado-Garcia*, 374 F.3d at 1347.

Other circuits have similarly found that subsections of § 1324(a) apply extraterritorially.  The D.C. Circuit came to that conclusion in *United States v. Delgado-Garcia*.  *Id.* at 1344.  There, the defendant, like Rolle, was charged with conspiring to encourage or induce aliens to enter the United States and with attempting to bring unauthorized aliens into the United States.  *Id.* at 1339. The court held that the statute's context warranted a reading in favor of extraterritoriality.  *Id.* at 1345.  We find the D.C. Circuit's reasoning persuasive:

> On its face, [§ 1324(a)] concerns much more than merely "domestic conditions."  It protects the borders of the United States against illegal immigration. . . . [T]his country's border-control policies are of crucial importance to the national security and foreign policy of the United States, regardless whether it would be possible, in an abstract sense, to protect our borders using only domestic measures. . . .  It is natural to expect that a statute that protects the borders of the United States, unlike ordinary domestic statutes, would reach those outside the borders. . . .  [A]s the Supreme Court observed in *United States v.*

> *Bowman*, "the natural inference from the character of the offense[s]" is that an extraterritorial location "would be a probable place for [their] commission."

*Id.* at 1345 (quoting *Bowman*, 260 U.S. at 99).

The D.C. Circuit went on to explain how the terms of § 1324(a)(1)(A) and (a)(2) suggest application to much extraterritorial conduct:

> Because an alien will not be in the United States if the attempt is incomplete, the offender will ordinarily also be outside the United States during the attempt. This is true even if the government foils many incomplete attempts at the borders of the United States. That many attempts to bring someone into the United States will occur outside the United States is strongly suggestive that these subsections and their neighbors apply, as a matter of ordinary language, to extraterritorial acts.

> .  .  .

> Certainly it is possible to induce a potential illegal immigrant to come to the United States from within the United States, . . . but it is obviously much easier to do so when in proximity to the immigrant. It is also possible to conspire to induce illegal immigration into the United States from anywhere in the world; but, again, it is easier to do so outside the United States, in proximity to those who carry out the plot.

*Id.* at 1347–48.

In *United States v. Villanueva*, the Fifth Circuit also held that § 1324(a)(2)(B)(ii) applies extraterritorially.  408 F.3d 193, 196 (5th Cir. 2005).  In reaching this conclusion, the court considered the text of the statute; the statute's legislative history; the fact that the statute criminalizes attempts; and the context of immigration statutes which, "by their very nature, pertain to activity at or near international borders."  *Id.* at 198–99.

Similarly, in *United States v. Beliard*, the First Circuit held that a conviction under § 1324 for inducing or encouraging the illegal entry of aliens into the United States could be sustained where the defendant's acts took place outside the United States.  618 F.2d 886, 887 (1st Cir. 1980) (citing to Ninth and Second Circuit cases that held the same).

Finally, the Ninth Circuit recognized the extraterritoriality of § 1324(a)(2) in dicta in *United States v. Lopez*.  *See* 484 F.3d 1186, 1194–95 (9th Cir. 2007) (en banc).  The court stated that, "[i]n construing the 'brings to' offense, we observe initially that '[t]he language of the statute itself indicates that Congress intended it to apply to extraterritorial conduct.'"  *Id.* (quoting *Villanueva*, 408 F.3d at 198).

Our interpretation of the statute aligns with the other circuits that have ruled on this issue.  The very nature of alien smuggling involves foreign countries, and accomplishing the crimes almost always requires action abroad.  Thus, limiting § 1324(a) to the

territorial United States would significantly curtail the effectiveness of the statute because it would prevent the government from prosecuting those who engage in the targeted conduct but simply fail to cross our border. *See Bowman*, 260 U.S. at 98. A strictly domestic reading of § 1324(a) would "leave open a large immunity" for alien smuggling, so, given the nature of the offenses, we may infer that the statute applies extraterritorially. *Id.*

Our court has applied the *Bowman* exception in similar cases despite the absence of an express statement of extraterritorial application on the face of the statute. *See, e.g.*, *MacAllister*, 160 F.3d at 1306–09 (applying *Bowman* and holding that a cocaine conspiracy statute lacking an express extraterritoriality statement applies to a Canadian citizen's conduct abroad); *Plummer*, 221 F.3d at 1304–05 (listing cases in which our circuit and other circuits "routinely inferred congressional intent to provide for extraterritorial jurisdiction over foreign offenses that cause domestic harm"); *Frank*, 599 F.3d at 1230–32 (applying *Bowman* and holding that a child-sex-trafficking statute applies extraterritorially despite lacking an express extraterritoriality statement). We agree with the government that it would defy logic to conclude that Congress—in creating a statute that prohibits attempts and conspiracies to bring or encourage aliens to come to the United States—would hinder its own efforts by restricting the statute to purely domestic conduct.

*Bowman*'s principles and the weight of authority from our sister circuits overwhelmingly support our conclusion that extraterritoriality may be inferred from Congress' intent to prevent

illegal immigration and from the nature of the offenses—each of which contemplate conduct at, near, and beyond our borders. Therefore, we hold that §§ 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I), and (a)(2)(B)(ii) apply extraterritorially.

## IV.  JURISDICTION OVER ROLLE COMPORTS WITH INTERNATIONAL LAW

Before giving extraterritorial effect to a statute, we must also consider whether doing so would violate international law. *Frank*, 599 F.3d at 1233.  Pursuant to the law of nations, a nation may exercise criminal jurisdiction under five general principles: "(1) the 'objective' territorial, (2) the national, (3) the protective, (4) the universal, and (5) the passive personality." *MacAllister*, 160 F.3d at 1308 n.9.  Here, the protective principle allows the United States to exercise jurisdiction over Rolle.  Under the protective principle, "jurisdiction is based on whether the national interest is injured." *United States v. Benitez*, 741 F.2d 1312, 1316–17 (11th Cir. 1984) (upholding jurisdiction over a non-United States citizen where conduct occurred abroad and the charging statutes did not include an express statement of extraterritorial application).  The government asserts—and Rolle does not dispute—that Rolle's attempt to bring aliens to the United States and his conspiracy to encourage aliens to come to the United States clearly violate our country's border-control interests.  We agree that his conduct injures "the national interest," *id.* at 1316, and thus the government properly exercised jurisdiction over Rolle under the protective principle.

## V.    CONCLUSION

We hold that *Bowman* remains binding law and that, under *Bowman*, §§ 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I), and (a)(2)(B)(ii) apply to Rolle's extraterritorial conduct.  Accordingly, we affirm Rolle's convictions.

**AFFIRMED.**