**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12666

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

YANDREY NEGRIN ROJAS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20438-RNS-4

_____

Before JORDAN, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

Yandrey Negrin Rojas appeals his sentence of 97 months' imprisonment for one count of conspiracy to transport and harbor aliens for profit and seven counts of transporting aliens for profit. He

argues that the district court improperly considered acquitted conduct at sentencing, which violated his Sixth Amendment right to a jury trial and led to the improper imposition of four sentencing enhancements. Based on our review of the record and the parties' briefs, we affirm.

**I**

In August of 2022, a group of Cuban migrants boarded a go-fast boat headed for the United States. In the night, the boat traversed the sea and dropped the migrants on an uninhabited key in the Florida Keys. For two days, they were left with nothing more than a cooler containing water and crackers until another vessel picked them up. These vessels were overcrowded and did not have enough life jackets for the number of migrants aboard.[1]

When the second vessel came ashore, Mr. Negrin Rojas and his co-conspirators met the migrants and transported them to a house in Marathon, Florida. Mr. Negrin Rojas later transported some of them to a house in Hialeah, Florida. Once the migrants were in the house, Mr. Negrin Rojas (or one of his co-conspirators) would call the migrants' relatives and/or friends in the United States and tell them that their relative or friend would not be released unless they paid Mr. Negrin Rojas and his co-conspirators $15,000. There were always two individuals guarding the houses—often carrying firearms. Mr. Negrin Rojas testified that they could

---

[1] We recite the facts as stated in Mr. Negrin Rojas' admissions at his change of plea hearing, his testimony at trial, and the factual statements in his presentence investigation report (to which he did not object).

not allow the migrants to leave because the migrants would get arrested and deported to Cuba. There is no evidence that the smugglers physically harmed any of the migrants to keep them in the houses.

A friend of one of the migrants, who was being held in Hialeah, contacted law enforcement. On September 2, 2022, the friend, accompanied by an undercover law enforcement officer, met with two of Mr. Negrin Rojas' co-conspirators, rescued the migrant, and arrested the two co-conspirators. That migrant identified Mr. Negrin Rojas in a lineup as one of the individuals who was present when the boat arrived in the United States. Later that same day, law enforcement stopped a white SUV leaving the Hialeah house, rescued four more migrants, and arrested another one of Mr. Negrin Rojas' co-conspirators.

Mr. Negrin Rojas' participation in this migrant smuggling operation began around June of 2022 and ended when his co-conspirators were arrested on September 2, 2022. But Mr. Negrin Rojas was not apprehended until August 15, 2023.

A grand jury indicted Mr. Negrin Rojas, charging him with conspiracy to transport and harbor aliens for profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 1); seven counts of transporting an alien for profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) (Counts 2–8); conspiracy to commit hostage taking, in violation of 18 U.S.C. § 1203(a) (Count 9); and seven counts of hostage taking, in violation of 18 U.S.C. § 1203(a) (Counts 10–16). Mr. Negrin Rojas, without a plea agreement, pled guilty to Counts 1 through 8.

After a nine-day trial, a jury acquitted Mr. Negrin Rojas of Counts 9 through 16.

Mr. Negrin Rojas had a criminal history category of I. The district court utilized a base offense level of 12 pursuant to U.S.S.G. § 2L1.1(a)(3). The court then applied a 6-level enhancement for the number of victims pursuant to § 2L1.1(b)(2)(A) and a 4-level firearm brandishing enhancement pursuant to § 2L1.1(b)(5)(B). The court added a 2-level enhancement for substantial risk of serious bodily injury pursuant to § 2L1.1(b)(6). The court noted that "even if, technically, the conduct of leaving these people on an uninhabited key without food or water probably doesn't meet that criteria, [it] would have varied two levels, giving the same sentencing relevant to that enhancement." D.E. 282 at 41.

The district court then applied a 2-level enhancement because an alien was involuntarily detained in connection with a demand for payment pursuant to § 2L.1(b)(8)(A)(ii). The court also applied a 2-level vulnerable victim enhancement pursuant to § 3A1.1(b)(1). The court again noted that "even if this conduct or the victim's status would not have technically met the legal criteria of the, quote, vulnerable victim," the court "would have varied upward as the judge did in [*United States v.*] *Angeles-Mendoza*[, 407 F.3d 742 (5th Cir. 2005)]." D.E. 282 at 42. Finally, the court added a 2-level enhancement for Mr. Negrin Rojas' leadership role in the conspiracy pursuant to § 3B1.1(c).

These enhancements brought the adjusted offense level to 30, and after the subtraction of 2 levels for acceptance of responsibility, the final offense level was 28. In applying these enhancements, the court stated that it did not consider acquitted conduct. *See* D.E. 282 at 71.

Mr. Negrin Rojas' resulting advisory guideline range was 78 to 97 months' imprisonment. The district court sentenced Mr. Negrin Rojas to the top end of the advisory guideline range and imposed a sentence of 97 months' imprisonment.

## II

Mr. Negrin Rojas argues that the district court erred by considering acquitted conduct at sentencing. He contends that the court's consideration of acquitted conduct violated his Sixth Amendment right to a jury trial. Despite the district court's assurances that it did not consider acquitted conduct, he maintains that the application of the enhancements involved conduct that is inextricably connected to the conduct for which the jury acquitted him.

### A

We review constitutional sentencing issues *de novo*. *See United States v. Smith*, 775 F.3d 1262, 1265 (11th Cir. 2014) (citing *United States v. Steed*, 548 F.3d 961, 978 (11th Cir. 2008)). We also review legal conclusions regarding the advisory guidelines *de novo* and factual findings for clear error. *See United States v. Cruz*, 713 F.3d 600, 605 (11th Cir. 2013) (citing *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009)).

**B**

"Under our long-standing precedent, relevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence." *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006) (internal quotation marks omitted, citation omitted, and alteration adopted). *See also United States v. Watts*, 519 U.S. 148, 149, 155–56, 157 (1997) (holding that a sentencing court may consider acquitted conduct when fashioning a sentence if the conduct has been proven by a preponderance of the evidence).

In November of 2024, after Mr. Negrin Rojas' sentencing, Amendment 826 to the Sentencing Guidelines went into effect. *See* U.S. Sentencing Comm'n Guideline Manual § 1B1.3 (Nov. 2024). Amendment 826 amended U.S.S.G. § 1B1.3 by adding a new subsection (c) for "Acquitted Conduct," which reads: "Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." *See id*. We have said that Amendment 826 is not retroactive. *See United States v. Romeu*, No. 25-10788, 2026 WL 36113, at *3 (11th Cir. Jan. 6, 2026). *See also United States v. Simpson*, 138 F.4th 438, 455 (6th Cir. 2025) (stating that Amendment 826 is not a retroactive clarifying amendment). Although we are not bound by our unpublished decision in *Romeu*, Mr. Negrin Rojas has not meaningfully argued that Amendment 826 is a clarifying amendment which applies retroactively. *See United States v. Jerchower*, 631 F.3d 1181,

1184 (11th Cir. 2011) (noting that "clarifying amendments to the Sentencing Guidelines are to be given retroactive effect") (internal quotation marks and citation omitted).

Because Amendment 826 does not apply, we must apply the law at the time of sentencing. We are bound to follow Supreme Court precedent and our existing precedents that foreclose Mr. Negrin Rojas' acquitted conduct argument. *See, e.g., Watts*, 519 U.S. at 157; *Faust*, 456 F.3d at 1347. Indeed, Mr. Negrin Rojas acknowledges that *Watts* and its progeny control but contends that *Watts* was wrongly decided. We are bound by *Watts'* holding that a sentencing court may properly consider acquitted conduct and its application in our precedents. *See United States v. Rolle*, 65 F.4th 1273, 1277 (11th Cir. 2023) ("Only the Supreme Court may overturn its precedents.") (alterations adopted, internal quotation marks omitted, and citation omitted). *See also United States v. Touray*, 151 F.4th 1317, 1332 (11th Cir. 2025) ("So long as the sentence imposed by the district court does not exceed the sentence authorized by the jury verdict and is supported by a preponderance of the evidence, it does not violate the Fifth or Sixth Amendments to consider acquitted conduct at sentencing.") (internal quotation marks and citation omitted).

Even so, this is not the case to determine the effect of Amendment 826 on our Sixth Amendment acquitted conduct sentencing precedents because we doubt that the district court considered acquitted conduct. First, the court stated that it did not consider acquitted conduct. Second, because Mr. Negrin Rojas did not

object to most of the factual statements in the presentence investigation report, he "admit[ted] those facts for sentencing purposes." *United States v. Turner*, 626 F.3d 566, 572 (11th Cir. 2010) (quoting *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006)). We discern no error in the district court's consideration of Mr. Negrin Rojas' admitted conduct to apply the four enhancements.[2]

### III

We affirm Mr. Negrin Rojas' sentence.

**AFFIRMED.**

---

[2] Because we discern no error, we need not reach the government's alternative ground for affirmance that any error was harmless. *See, e.g., United States v. Files*, 63 F.4th 920, 933 (11th Cir. 2023) (Newsom and Tjoflat, J.J., concurring); *United States v. Horn*, 129 F.4th 1275, 1306 (11th Cir. 2025) (Jordan, J., concurring in part and concurring in the judgment) (explaining that there is no reason to decide "more than what is necessary to resolve [an] appeal") (alterations adopted, internal quotation marks omitted, and citation omitted).