[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14825
_____

Agency No. A079-397-192


MATTHEW JOHN HYLTON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 31, 2021)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and ED CARNES, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This petition for review requires us to decide whether a denaturalized alien is removable as an aggravated felon based on convictions entered while he was an American citizen. The Board of Immigration Appeals ordered Matthew Hylton

removed as an alien convicted of aggravated felonies after his admission to the United States. But unlike most aggravated felons facing removal, Hylton was a citizen when he was convicted. Federal law provides that "[a]ny *alien* who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added). By its plain terms, this provision does not apply to aliens who were *citizens* when convicted. So its plain meaning forecloses the Board's interpretation, and binding precedent, *Costello v. Immigr. & Naturalization Serv.*, 376 U.S. 120 (1964), forecloses treating Hylton's denaturalization as retroactive for removal purposes. We grant Hylton's petition for review, vacate the decision of the Board, and remand for further proceedings.

## I. BACKGROUND

Matthew Hylton was admitted to the United States as a nonimmigrant visitor from Jamaica in 1993. He became an American citizen on September 16, 2008. The day of his naturalization ceremony, Hylton completed a form in which he affirmed that, since his naturalization interview, he had not "knowingly committed any crime or offense, for which he had not been arrested." This affirmation was false.

Six days before the ceremony, Hylton had robbed a bank. His transgression did not stay undetected for long. The next year, he pleaded guilty to charges of armed bank robbery and unlawful transfer of a firearm. 18 U.S.C. §§ 924(h),

2113(a), (d). In 2011, a jury convicted him of obtaining citizenship by fraud. *Id.* § 1425(a). A district court then revoked his American citizenship.

In 2018, the Department of Homeland Security initiated removal proceedings against Hylton. It charged him as removable because he had been convicted of aggravated felonies. 8 U.S.C. § 1227(a)(2)(A)(iii). Under the Immigration and Nationality Act, his convictions for armed bank robbery and for unlawful transfer of a firearm both qualify as aggravated felonies. *See id.* § 1101(a)(43)(E)–(F); 18 U.S.C. § 16(a); *In re Sams*, 830 F.3d 1234, 1238 (11th Cir. 2016).

Hylton moved to terminate the removal proceedings. He argued that he was not removable in the light of the decision in *Costello v. Immigration & Naturalization Service*. 376 U.S. 120. In *Costello*, the Supreme Court held that a similarly worded ground of removal did not apply to an alien in Hylton's position—that is, a person who was a naturalized citizen at the time of his relevant convictions but was later denaturalized. *Id.* at 121, 127–28.

The immigration judge concluded that *Costello* was inapposite. He based his conclusion on a line of decisions from the Board of Immigration Appeals. According to the Board, *Costello* grounded its holding on the right of an alien to seek a judicial recommendation against deportation, so it is not binding in contexts where such a recommendation is unavailable. The immigration judge also pointed

3

to factual differences between Hylton's case and *Costello*. He denied Hylton's motion to terminate the proceedings, sustained the charges of removability, and ordered Hylton removed to Jamaica.

The Board dismissed Hylton's appeal in a single-member decision. It adopted the immigration judge's reasoning. And it reiterated that its decisions in *Matter of Rossi*, 11 I. & N. Dec. 514 (B.I.A. 1966), and *Matter of Gonzalez-Muro*, 24 I. & N. Dec. 472 (B.I.A. 2008), control in removal proceedings where there is no possibility of a judicial recommendation against deportation: in those proceedings, an alien may be removed for convictions he sustained while he was a citizen. Hylton petitions for review of the Board's decision.

## II. STANDARDS OF REVIEW

We review only the decision of the Board of Immigration Appeals, except to the extent that the Board adopts the opinion of the immigration judge. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We review questions of statutory interpretation *de novo*, but "[i]f the statute is . . . ambiguous with respect to the specific issue, we afford some level of deference to the Board's decision and evaluate whether it permissibly construed the statute." *Hincapie-Zapata v. U.S. Att'y Gen.*, 977 F.3d 1197, 1200 (11th Cir. 2020) (internal quotation marks omitted). "We afford *Chevron* deference to the Board's precedential decisions,"

4

including single-judge decisions that "rest[] on precedential authority from the Board." *Id.*

### III. DISCUSSION

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). If this provision applies to aliens who were citizens at the time of their predicate convictions, that application must follow from at least one of two possible bases. The first basis would be that the text of the provision supports the Board's reading, either unambiguously or based on *Chevron* deference. The second would be that Hylton's denaturalization operated retroactively to negate his earlier citizenship. We consider and reject each possibility in turn.

*A.  The Plain Meaning of Section 1227(a)(2)(A)(iii) Excludes Aliens Who Were Citizens at the Time of Their Convictions.*

"As a general rule, an agency's interpretation of a statute which it administers is entitled to [*Chevron*] deference if the statute is silent or ambiguous and the interpretation is based on a reasonable construction of the statute." *Sanchez Fajardo v. U.S. Att'y Gen.*, 659 F.3d 1303, 1307 (11th Cir. 2011). At the first step of *Chevron*, we evaluate whether Congress has written clearly. *Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1298 (11th Cir. 2018). If it has not, then we consider, at the second step, the permissibility of the agency's reading of the statute. *See id.* at 1297. But if Congress has written clearly, then our inquiry ends and "we must give

5

effect to the unambiguously expressed intent of Congress." *Id.* at 1298 (internal quotation marks omitted).

To determine whether a statute has a plain meaning, we ask whether its meaning may be settled by the "traditional tools of statutory construction." *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). These tools encompass our "regular interpretive method," *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004), including the canons of construction. We conclude that the canons make the meaning of section 1227(a)(2)(A)(iii) unambiguous.

Begin with the prior-construction canon. That canon establishes that "[i]f a statute uses words or phrases that have already received authoritative construction by the jurisdiction's court of last resort, . . . they are to be understood according to that construction." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 54, at 322 (2012). "When Congress use[s] the materially same language in [a more recent enactment], it presumptively [is] aware of the longstanding judicial interpretation of the phrase and intend[s] for it to retain its established meaning." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1762 (2018).

Decades before Congress adopted what is now section 1227(a)(2)(A)(iii), the Supreme Court evaluated whether a materially identical provision—authorizing

6

the removal of an alien who was convicted of multiple crimes involving moral turpitude—applied to an alien who was a citizen at the time of his convictions. Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7344(a), 102 Stat. 4181, 4470–71; *Costello*, 376 U.S. at 121–28. The moral-turpitude provision read, "Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who . . . at any time after entry is convicted of two crimes involving moral turpitude[.]" *Costello*, 376 U.S. at 121 (internal quotation marks omitted).

*Costello* identified two features of this language as key to its meaning. These features distinguished the provision from an earlier removal ground that targeted violators of the Espionage Act of 1917, which the Court had construed to apply to aliens regardless of their status when convicted. *Id.* at 122–23. Unlike the earlier ground, the moral-turpitude provision "employ[ed] neither a past tense verb nor a single specific time limitation." *Id.* at 124. In other words, it referred to an alien who "is convicted," not to aliens who "have been" convicted. *Id.* at 121, 123 (internal quotation marks omitted). And it did not specify application to convictions that occurred after a particular date. *Id* at 121.

Congress retained these two features when it adopted the aggravated-felony provision. This provision too refers to an "alien who *is* convicted." 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added). And it likewise does not contain a date limitation. *Id.*

7

The two provisions use materially the same language, despite slight differences. The provision that governs Hylton's petition renders deportable "[a]ny alien who is convicted of an aggravated felony at any time after admission," while the provision from *Costello* applied to "[a]ny alien . . . who . . . at any time after entry is convicted of two crimes involving moral turpitude." *Id.*; *Costello*, 376 U.S. at 121. But we do not see how these slight differences alter the category of aliens affected by these provisions.

Because Congress imported previously interpreted language when it added the removal ground for aggravated felons, the analysis in *Costello* informs our reading of the newer provision. *Costello* acknowledged that, read alone, the language was susceptible to two "possible readings"; it could be read to "permit[] deportation only of a person who was an alien at the time of his convictions" or to "permit[] deportation of a person now an alien who at any time after entry has been convicted of two crimes, regardless of his status at the time of the convictions." *Costello*, 376 U.S. at 124. But after applying the ordinary rules of statutory interpretation, the Court concluded that the provision could not be applied against an alien who was a citizen at the time of his convictions. *Id.* at 126–28.

Two rules of interpretation were independently dispositive in *Costello*. First, under the then-existing scheme, a deportation ordered under the moral-turpitude provision would be cancelled if the court that issued the convictions made a

8

judicial recommendation against deportation within 30 days of issuing its sentence. *Id.* at 126; *see* 8 U.S.C. § 1251(b)(2) (1964). Because a citizen would not be eligible for this recommendation, that form of relief would be unavailable to aliens who were naturalized citizens when convicted but were later denaturalized. *Costello*, 376 U.S. at 127. Second, in the alternative, the Court was "constrained by accepted principles of statutory construction . . . to resolve [any remaining] doubt in favor of the petitioner," in the light of the stakes for an alien facing removal. *Id.* at 128.

Taken together, the prior-construction canon counsels in favor of reading section 1227(a)(2)(A)(iii) like *Costello* read the moral-turpitude provision. Congress adopted the provision against the background of *Costello*, so we understand Congress to have adopted the limitation identified in *Costello*. *See* Scalia & Garner, *Reading Law* § 54, at 326. This presumption has special force because *Costello* and this appeal concern the same question, *cf. Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 563 (2017), and involve provisions in the same field, Scalia & Garner, *Reading Law* § 54, at 323.

The presumption of consistent usage also supports reading section 1227(a)(2)(A)(iii) as inapplicable to aliens like Hylton. We presume that "word[s] or phrase[s] . . . bear the same meaning throughout a text," and that presumption is strengthened "the more connection the cited [provision] has with the [provision]

9

under consideration." *Id.* § 25, at 170, 173. Congress enacted the provision at issue

to follow immediately the provision from *Costello*. *See* Anti-Drug Abuse Act

§ 7344(a); 8 U.S.C. § 1251(a)(4) (1988). The two provisions remain in consecutive

subsections of the current Code. *See* 8 U.S.C. § 1227(a)(2)(A)(ii)–(iii) (2018);

*Okpala v. Whitaker*, 908 F.3d 965, 969 & n.2 (5th Cir. 2018). It would be odd if, in

two consecutive subsections of the Code, which use materially identical language,

the same words were read to mean one thing in the first subsection but another in

the second. All else being equal, we prefer a reading of the second that coheres

with binding precedent as to the first.

The relevant statutory scheme provides further support for this reading of

section 1227(a)(2)(A)(iii). The relevant scheme is the one in place in 1988, when

the provision was enacted. At that time, an alien could seek relief from removal

under the provision by obtaining a judicial recommendation against deportation.

*See United States v. Bodre*, 948 F.2d 28, 30 (1st Cir. 1991). So the reasoning of

*Costello* applies with equal force here. If the provision originally could have been

applied against an alien who was a citizen at the time of his convictions, that alien

would have been deprived of a remedy available to all other aliens. And because

"provisions of a text should be interpreted in a way that renders them compatible,"

Scalia & Garner, *Reading Law* § 27, at 180, we should not "adopt[] a construction

of [the aggravated-felony provision] which would [have], with respect to an entire

10

class of aliens, completely nullif[ied] a procedure so intrinsic a part of the legislative scheme," *Costello*, 376 U.S. at 127–28.

It makes no difference that the current statutory scheme no longer permits judicial recommendations against deportation. Congress abolished that form of relief in 1990. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 505, 104 Stat. 4978, 5050. But just as we apply a "strong presumption against implied repeals," *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1222 (11th Cir. 2014), we apply a presumption against implied changes to the meaning of a still-in-force statute. "A clear, authoritative judicial holding on the meaning of a particular provision should not be cast in doubt . . . whenever a related though not utterly inconsistent provision is adopted[.]" Scalia & Garner, *Reading Law* § 55, at 331. If Congress wanted to alter the scope of the removability grounds, it would have done so explicitly.

Applying these canons of construction, we conclude that the meaning of section 1227(a)(2)(A)(iii) is unambiguous. Although no canon is absolute, the relevant canons all cut in the same direction, and we must give effect to the clear expression of Congress. Section 1227(a)(2)(A)(iii) does not make aliens who were citizens at the time of their predicate convictions removable. And we decline the government's invitation to defer to the Board's contrary reading. "Where, as here,

11

the canons supply an answer, *Chevron* leaves the stage." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) (internal quotation marks omitted).

The government contends that it is dispositive for purposes of the first step of *Chevron* that *Costello* referred to the language at issue as ambiguous. 376 U.S. at 124–25. But the provision in *Costello* was ambiguous only when read in isolation; the ambiguity no longer remained when the language was read in its statutory context, as it must be. *Id.*; *Robinson v. Shell Oil Co.*, 519 U.S 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). And regardless, a pre-*Chevron* recognition of linguistic ambiguity does not necessarily establish ambiguity in the *Chevron* sense. *United States v. Home Concrete & Supply, LLC*, 566 U.S. 478, 488–89 (2012) (plurality op.).

The Board's decision likewise rested on misunderstandings of *Costello*. The Board asserted that *Costello* was "primarily predicated" on the importance of the judicial recommendation against deportation. *Rossi*, 11 I. & N. Dec. at 515–16. But *Costello* identified the immigration rule of lenity as an independent basis for its holding. 376 U.S. at 128. When a court interprets a statute before the agency does and determines that the statute is unambiguous based on the rule of lenity, its reading is binding on the implementing agency. *See Nat'l Cable & Telecomms.*

12

*Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984–85 (2005); *see also Sash v. Zenk*, 439 F.3d 61, 67 n.6 (2d Cir. 2006) (Sotomayor, J.) (explaining that *Brand X* creates an exception to the ordinary rule that "*Chevron* deference will apply prior to the rule of lenity"). And, setting the rule of lenity aside, the Board put too much weight on Congress's elimination of the judicial recommendation against deportation. We reiterate that that change did not impliedly alter the controlling construction of the removal provisions. Scalia & Garner, *Reading Law* § 55, at 331.

Nor, as the government asserts, did the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 impliedly alter the meaning of section 1227(a)(2)(A)(iii). The government points to an amendment that expanded the definition of "aggravated felony." Pub. L. No. 104-208, § 321, 110 Stat. 3009-627. As codified, the amendment established that "the term"—as in, the new definition—"applies regardless of whether the conviction was entered before, on, or after September 30, 1996." 8 U.S.C. § 1101(a)(43). But we do not see how this amendment has any bearing on the retroactivity of the aggravated-felony *removal ground*. Section 1101(a)(43) did not *sub silentio* alter other provisions of our immigration law. *See Okpala*, 908 F.3d at 970 n.3.

Finally, the factual distinctions identified by the government and the Board are immaterial. True enough, there are differences between Costello's background

13

and Hylton's. For example, Costello was an American citizen when he committed the crimes that became the basis for his removability, and Hylton was an alien. But *Costello* makes clear that, because section 1227(a)(2)(A)(iii) refers to an alien who is *convicted* of an aggravated felony, we are concerned with the alien's citizenship status at the time of conviction, not the time of the crime. 376 U.S. at 123, 125, 127. We may not "'reinterpret' the [Supreme] Court's binding precedent in [the] light of irrelevant factual distinctions." *Balintulo v. Daimler AG*, 727 F.3d 174, 190 (2d Cir. 2013).

### B.  *We May Not Treat Denaturalized Aliens As If They Were Aliens at the Time of Their Convictions.*

We are similarly unpersuaded by the government's alternative argument as to why we should deny Hylton's petition. The government asserts that, because denaturalization operates *ab initio*, 8 U.S.C. § 1451(e), it "relates back" to the date of Hylton's convictions. So, in its view, we should treat him as if he had been an alien then. But, as the government acknowledges, *Costello* squarely rejected this reading of section 1451. 376 U.S. at 128–29. The Supreme Court explained that, if Congress had wanted denaturalization to have retroactive effect for purposes of deportation, it should have made that intent explicit. *Id.* at 129–30, 132. Because only the Supreme Court may overturn its precedents, *Costello* controls our resolution of this issue. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); Bryan A.

14

Garner et al., *The Law of Judicial Precedent* § 2, at 29 (2016). We may not pretend

that Hylton was an alien all along. *Okpala*, 908 F.3d at 969–70.

## IV. CONCLUSION

We **GRANT** the petition for review, **VACATE** the decision of the Board,

and **REMAND** for further proceedings consistent with our opinion.

15