RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ELFIDO GONZALEZ CASTILLO,

*Petitioner*,

*v.*

PAMELA BONDI, Attorney General,

*Respondent*.

Nos. 24-3631/3633/3634

On Petition for Review from the Board of Immigration Appeals.
No. A 090 276 154.

Argued: June 11, 2025

Decided and Filed: June 18, 2025

Before: SUTTON, Chief Judge; CLAY and THAPAR, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Benjamin R. Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Alanna Thanh Duong, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Benjamin R. Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Lindsay Marshall, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

SUTTON, C.J., delivered the opinion of the court in which CLAY and THAPAR, JJ., concurred. THAPAR, J. (pp. 12–22), delivered a separate concurring opinion.

_____

**OPINION**

_____

SUTTON, Chief Judge.  Elfido Gonzalez Castillo illegally entered the United States and eventually applied for citizenship.  He succeeded, but only because he failed to disclose a recent indictment for sexually abusing his niece.  Shortly after becoming a citizen, Gonzalez pleaded guilty to the offense.  Years later, the government revoked Gonzalez's citizenship due to his lie.  It then tried to deport him based on a statute that renders removable "[a]ny alien who at any time after admission is convicted of a crime of . . . child abuse."  8 U.S.C. § 1227(a)(2)(E)(i).  An immigration judge ordered him removed, as did the Board of Immigration Appeals.  But because Gonzalez was a citizen, not an alien, when his conviction occurred, and because the Supreme Court has rejected a similar argument, we grant his petition for review.

I.

A native and citizen of Mexico, Gonzalez illegally entered the United States in June 1981.  In November 1989, he became a lawful permanent resident.  Two decades later, in March 2009, Gonzalez applied for naturalization with the U.S. Citizenship and Immigration Services.  He succeeded but not with clean hands.

In June 2009, with his application pending, Maryland law enforcement officers arrested Gonzalez and charged him with seven counts related to the sexual abuse of his minor niece.  *See* Md. Crim. Law §§ 3-602, 3-306, 3-307.  After the arrest, immigration officers twice interviewed Gonzalez about his pending naturalization application.  In the first interview, an officer asked Gonzalez if he had ever been arrested or jailed, and he responded that he once was arrested and jailed for a night after driving under the influence in 1995.  In the second interview, an officer asked if he had ever been charged with committing a crime, and Gonzalez answered that he once was charged with using false identification in 1983.  Gonzalez did not mention that he had been arrested and charged with a sexual-abuse crime a few months before the interviews.

Gonzalez became a naturalized citizen in October 2009. Two months later, Gonzalez pleaded guilty to one count of sexual abuse in the third degree. He was sentenced to three years in prison, eighteen months of which were suspended.

Gonzalez enjoyed his naturalized status without incident for about a decade. In 2019, the government sought to revoke his citizenship, and in May 2022 a court ordered its cancellation in light of his admission that he illegally procured it. 8 U.S.C. § 1451(a). In August 2022, the Department of Homeland Security initiated removal proceedings against Gonzalez and claimed he should be deported under 8 U.S.C. § 1227(a)(2)(E)(i). That provision says that "[a]ny alien who at any time after admission is convicted of a crime of . . . child abuse . . . is deportable." *Id.* § 1227(a)(2)(E)(i).

An immigration judge sustained the charge and denied Gonzalez's application for cancellation of removal. The Board of Immigration Appeals rejected his appeal.

He sought review in the Third Circuit. It determined that venue lay elsewhere and transferred his petition here. *Castillo v. Att'y Gen. of the U.S.*, 109 F.4th 127, 134 (3d Cir. 2024).

## II.

When the Board of Immigration Appeals reviews an immigration judge's decision and "issues a separate opinion, rather than summarily affirming" the decision, as it did in this case, "we review the Board's decision as the final agency determination." *Seldon v. Garland*, 120 F.4th 527, 531 (6th Cir. 2024) (quotation omitted). We give fresh review to its legal conclusions. *Id.*

At issue is the meaning of this sentence in the immigration laws: "Any alien who at any time after admission is convicted of a crime of . . . child abuse . . . is deportable." 8 U.S.C. § 1227(a)(2)(E)(i). Is Gonzalez deportable, in other words, under the child-abuse provision even though, at the time of the predicate conviction, he was a naturalized citizen?

## A.

Under the "best reading" of the child-abuse provision, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024), it does not cover individuals who were citizens at the time of the

relevant conviction. Start with the phrase "alien . . . who . . . is convicted." 8 U.S.C. § 1227(a)(2)(E)(i). Congress defined "alien" as "any person not a citizen or national of the United States." *Id.* § 1101(a)(3). That was not Gonzalez at the time of the conviction. The phrase "is convicted" also uses a present-tense, passive-voice structure. That suggests that the child-abuse provision covers only the removal of an individual who "is" an alien at the time of the conviction.

Precedent reinforces this interpretation. In 1964, 32 years before Congress enacted this provision, the Supreme Court addressed a similar issue in *Costello v. INS*, 376 U.S. 120 (1964). The case concerned Frank Costello, an immigrant who obtained citizenship through naturalization in 1925. *Id.* at 121. While a citizen, Costello was convicted of tax-evasion crimes that would render an alien deportable. *Id.* Years later, the government discovered that Costello lied on his naturalization forms. *Id.* Costello had claimed to work in "real estate" in 1925, but in truth he had been a "bootlegger" and thus "would probably not have been admitted to citizenship" had the truth come out. *Costello v. United States*, 365 U.S. 265, 267–68, 270 (1961).

After stripping Costello of his citizenship, the government sought to deport him for the tax crimes he committed while a citizen. It did so under a provision that called for the deportation of "[a]ny alien" who "at any time after entry is convicted of two crimes involving moral turpitude." *Costello*, 376 U.S. at 121 (quoting 8 U.S.C. § 1251(a)(4) (1964 ed.)). The question before the Supreme Court was whether the moral-turpitude provision applied to an alien who, at the time of his conviction, was a citizen. *Id.* at 122.

The Court rejected that possibility. In doing so, it noted that the moral-turpitude provision differed from an older removal ground that the Court had already construed to apply to aliens regardless of their citizenship status at the time of conviction. *Id.* at 122–24. The earlier provision referred to all "aliens who since August 1, 1914, have been or may hereafter be convicted" of violations of the Espionage Act of 1917. Act of 1920, Pub. L. No. 197, 41 Stat. 593; *United States ex rel. Eichenlaub v. Shaughnessy*, 338 U.S. 521, 527 (1950). Unlike that removal ground, the moral-turpitude provision employed "neither a past tense verb nor a single specific time limitation." *Costello*, 376 U.S. at 124. Its use of the present, passive tense and its

lack of a date limitation called for a different reading. These features of the law, together with the rule of lenity, prompted the Court to conclude that the moral-turpitude provision did not cover aliens who were citizens at the time of conviction. *Id.* at 126–28.

Under the prior-construction canon, we presume that, "[i]f a statute uses words or phrases that have already received authoritative construction by the jurisdiction's court of last resort," then "they are to be understood according to that construction." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 54, at 322 (2012); *see also Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). Congress had ample reason to understand *Costello*'s position on this language when it adopted the child-abuse provision in 1996. And it retained the relevant wording wholesale. Recall that the child-abuse provision refers to "[a]ny alien who at any time after admission is convicted of a crime of . . . child abuse," 8 U.S.C. § 1227(a)(2)(E)(i), and that the moral-turpitude provision refers to "[a]ny alien . . . who at any time after entry is convicted of two crimes involving moral turpitude," *id.* § 1251(a)(4) (1964 ed.). Both provisions refer to an alien who "is convicted." Both lack a temporal restriction. And the slight differences between the two stem from the class of crimes covered, not citizenship status. These revealing parallels offer one good reason to read the child-abuse provision in the same way as the *Costello* Court read the moral-turpitude provision.

Another good reason is that Congress knew how to speak otherwise. *See Russello v. United States*, 464 U.S. 16, 23 (1983). Several provisions of § 1227 do just that. One refers to an alien who "has been convicted" of certain controlled substance crimes and may be deported as a result. 8 U.S.C. § 1227(a)(2)(B)(i). Another refers to an alien "who is, or at any time after admission has been," a drug abuser and thus faces the same fate. *Id.* § 1227(a)(2)(B)(ii). The child-abuse provision's focus on an alien who "is convicted" markedly differs from its neighbors. It's fair to infer that the contrast stems from Congress's proper use of grammar, not a sixth grader's halting grasp of verb tense.

Other circuits have reached similar conclusions in similar settings. The Third Circuit construed the statute's aggravated-felony provision, which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." *Singh v. Att'y Gen. of the U.S.*, 12 F.4th 262, 272 (3d Cir. 2021) (quoting 8 U.S.C. § 1227(a)(2)(A)(iii)).

It concluded that the "provision unambiguously excludes" individuals who were convicted while citizens in view of the text, surrounding statutory provisions, and *Costello*. *Id.* at 273, 278. The Eleventh Circuit took a similar course, noting that "the prior-construction canon counsels in favor of reading" the aggravated-felony provision "like *Costello* read the moral-turpitude provision." *Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1159–60 (11th Cir. 2021). We know of no contrary circuit precedent.

While we think this is the best reading of the statute, we note that, as *Costello* observed, a statute in equipoise would call for the rule of lenity to alleviate the ambiguity. When such uncertainty clouds a deportation statute, "the longstanding principle of construing" it "in favor of the alien" kicks into gear. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) ("We resolve the doubts in favor of that construction because deportation is a drastic measure and at times the equivalent of banishment of exile."); *INS v. Errico*, 385 U.S. 214, 225 (1966) ("Even if there were some doubt as to the correct construction of the statute, the doubt should be resolved in favor of the alien."); *INS v. St. Cyr*, 533 U.S. 289, 320 (2001) ("buttress[ing]" its conclusion with "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien") (quotation omitted); *Kawashima v. Holder*, 565 U.S. 478, 489 (2012); *cf. Carachuri-Rosendo v. Holder*, 560 U.S. 563, 581 (2010).

The government claims that we should not focus on the phrase "is convicted" but instead should focus on the statute's reference to aliens convicted "at any time." That broad language, the government says, shows that Congress wanted the child-abuse provision to cover individuals who were convicted even after they became citizens. But the reference to aliens convicted "at any time" serves another purpose. The phrase distinguishes provisions like this one from others that may trigger deportability within, say, only five years of admission or entry. *See, e.g.*, 8 U.S.C. § 1227(a)(1)(E)(i) ("Any alien who . . . within 5 years of the date of any entry . . . has aided any other alien to enter or to try to enter the United States in violation of the law is deportable."); *id.* § 1227(a)(5) ("Any alien who, within five years after the date of entry, has become a public charge from causes not affirmatively shown to have arisen since entry is deportable."). The moral-turpitude provision in *Costello*, moreover, also referred to aliens

convicted at "any time" after entry. Yet the Supreme Court declined to conclude that the language, when paired with the "is convicted" language, covers all aliens regardless of their citizenship status when convicted. *Costello*, 376 U.S. at 121.

The government persists that Congress has changed the statute since *Costello* and that part of *Costello* rested on a provision that no longer exists. Under the Immigration Act of 1917, sentencing judges "had the power to make a recommendation that [an] alien shall not be deported." *Padilla v. Kentucky*, 559 U.S. 356, 361–62 (2010) (quotation omitted). Based on this judicial-recommendation provision, *Costello* explained that the moral-turpitude provision had to apply only to aliens who were aliens at the time of conviction. 376 U.S. at 127. If it extended to naturalized citizens, the Court noted, sentencing judges would have lacked the ability to recommend against deportation in those cases. *Id.* And that possibility would have rendered the judicial-recommendation provision "a dead letter" with "respect to an entire class of aliens." *Id.* Congress eliminated the judicial-recommendation provision in 1990, *Padilla*, 559 U.S. at 363; *see* Immigration Act of 1990, Pub. L. No. 101-649, § 505, 104 Stat. 5050, six years before it enacted the child-abuse provision. All of this means, the government claims, that *Costello* no longer applies.

But Congress's repeal of a provision on which *Costello* relied does not show that Congress overruled *Costello*. "When Congress intends to effect a change of that kind, it ordinarily provides a relatively clear indication of its intent in the text of the amended provision." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 268 (2017). That is why courts do "not favor[]" the "modification by implication of the settled construction of an earlier and different section." *United States v. Madigan*, 300 U.S. 500, 506 (1937). The repeal of the judicial-recommendation provision by itself does not suffice to "cast in doubt" *Costello*'s "authoritative judicial holding on the meaning" of the removability provision. Scalia & Garner, *supra*, § 55, at 331. Had Congress wished to change the meaning of "is convicted," it had straightforward tools for doing so.

*Costello* did not rest solely on the judicial-recommendation provision in any event. It also relied on the "is convicted" language in the statute. *Costello*, 376 U.S. at 123–25. Removing one reinforcing leg of a decision does not remove the other.

The government pivots to another Supreme Court precedent. It claims that *United States ex rel. Eichenlaub v. Shaughnessy* makes Gonzalez deportable. 338 U.S. 521 (1950). At issue in that case were the deportations of two men who emigrated from Weimar Germany, fraudulently obtained American citizenship, and were convicted for violating the Espionage Act of 1917 while enjoying their citizenship. *Id.* at 523–25. Eventually, their fraud came to light, prompting the government to strip the men of citizenship and to try to deport them for the Espionage Act violations. *Id.* at 524–25. *Eichenlaub* deemed both men deportable. *Id.* at 533. Gonzalez, the government says, should face the same fate.

The Supreme Court has already rejected this application of *Eichenlaub*. Recall that the statute at issue in *Eichenlaub* called for the removal of "[a]ll aliens who since August 1, 1914, have been or may hereafter be convicted of any violation or conspiracy to violate" the Espionage Act of 1917. *Id.* at 527 (quoting Act of 1920, Pub. L. No. 197, 41 Stat. 593). *Costello* explained that this provision differed in material ways from the moral-turpitude provision. One used the past tense ("have been . . . convicted"), while the other used the present tense ("is convicted of"). 376 U.S. at 124. More broadly, the law at issue in *Eichenlaub* "was a special statute dealing with sabotage and espionage during the first World War and applicable to some 650 aliens then in custody." *United States ex rel. Brancato v. Lehmann*, 239 F.2d 663, 666–67 (6th Cir. 1956); *see also Costello*, 376 U.S. at 124. *Eichenlaub*'s distinct background and distinct text have no role to play here after *Costello*.

The government pushes statutory purpose as a reinforcement of its own. The child-abuse provision entered the U.S. Code as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. When Congress passed that law, it represented "an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a comprehensive statutory scheme to cover crimes against children in particular." *In re Velazquez-Herrera*, 24 I. & N. Dec. 503, 508–09 (BIA 2008) (quotation omitted). That expansive effort, the government claims, demands that we construe the statute to include more offenders of crimes against children, not fewer. But that aim does not mean it "disfavor[ed] any obstacle to that goal." *Arangure v. Whitaker*, 911 F.3d 333, 345 (6th Cir. 2018). The text of the statute reflects the reasoned compromise by 535 legislators and one President, *SAS Inst., Inc. v. Iancu*, 584 U.S.

357, 370 (2018), and an "amorphous 'purpose'" cannot replace the enacted text, *Arangure*, 911 F.3d at 345. The best reading of the child-abuse provision remains the best way to honor the purpose of the 1996 Act.

The government in the alternative offers another way to think about the statute—that, in light of Gonzalez's denaturalization, we may treat him as though he has always been an alien and thus may deem him an alien at the time of the child-abuse conviction. The trouble with this theory, as the government acknowledges, is that *Costello* rejected it. Recall that Costello, like Gonzalez, immigrated to the United States and became a naturalized citizen after lying on his application. *Costello*, 376 U.S. at 121. He then committed crimes that would justify an alien's deportation. *Id.* After the government stripped Costello of his citizenship due to his misrepresentation, it tried to deport him based on the crimes he committed while enjoying his (falsely obtained) citizenship. *Id.*

Despite Costello's "willful misrepresentation," the Supreme Court refused to say he was never a citizen for deportation purposes. *Id.* at 130–31. It dismissed the government's focus on 8 U.S.C. § 1451(a), a provision that treats denaturalization orders as effective from the original date of naturalization. *Id.* at 129–30. As *Costello* saw it, § 1451(a)'s original-date provision pertained only to the "rights of derivative citizenship" (that is, the ability of a person's child to become a citizen), not deportation. *Id.* The Court added that, if Congress disagrees, it could amend the deportation statute to cover aliens like Costello, who were citizens at the time of the relevant conviction. *Id.* at 132.

We see no principled way to distinguish Gonzalez from Costello. Both men obtained citizenship after making false representations during the naturalization processes. Both men committed crimes while enjoying falsely obtained citizenship. And after both men lost their citizenship through the denaturalization process, they faced deportation charges based on their earlier convictions. When the Supreme Court explained what that meant for Costello, it did not speak haltingly. It "wrote broadly," *Okpala v. Whitaker*, 908 F.3d 965, 972 (5th Cir. 2018) (Jones, J., concurring), and "declined to apply" the original-date "fiction in [the] deportation context," notwithstanding Costello's fraud, *Costello*, 376 U.S. at 130. The same conclusion applies today.

Every circuit to address the question has reached the same conclusion. Nearly seven decades ago our own court found as much and, eight years later, the *Costello* Court favorably cited the decision. *See id.*; *Brancato*, 239 F.2d at 666 (interpreting Supreme Court precedent to "indicate[] disapproval of a relation-back construction"). Other courts of appeals have followed suit based on *Costello*. *Singh*, 12 F.4th at 279 (rejecting the theory that an alien's "denaturalization springs back in time to the date he fraudulently obtained his citizenship" because the "Supreme Court rejected that very argument more than half a century ago in *Costello*"); *Okpala*, 908 F.3d at 970 (concluding that, because *Costello* controls, one who fraudulently procured citizenship is "not rendered an 'alien' at the time of conviction by nature of his subsequent *ab initio* denaturalization"); *Hylton*, 992 F.3d at 1161 (rejecting the idea that denaturalization on fraud grounds "relates back" to cover an alien's prior convictions because "*Costello* squarely rejected this reading of section 1451").

The government reprises the Board's theory that *Costello* distinguishes between derivative citizenship (in which denaturalization dates back to the original time of naturalization) and removability (in which it does not). Authorities post-dating *Costello*, according to the Board, foreclose the possibility that Gonzalez's status could revert from naturalized citizen to alien. As a result, one must think of him as having never received citizenship. It's true that three months after *Costello*, the Supreme Court made clear that Congress must provide naturalized citizens with the same rights as native-born citizens. *Schneider v. Rusk*, 377 U.S. 163, 165 (1964). And three years later, it held that one cannot involuntarily lose his citizenship. *Afroyim v. Rusk*, 387 U.S. 253, 267–68 (1967). But both of those authorities concerned individuals who validly obtained citizenship. *Schneider*, 377 U.S. at 166 ("[T]he rights of the naturalized citizen derive from satisfying, *free of fraud*, the requirements set by Congress.") (emphasis added); *Afroyim*, 387 U.S. at 267 n.23 ("Of course . . . naturalization unlawfully procured can be set side."). Neither case thus provides reason to treat *properly* denaturalized individuals as having always been aliens for deportation purposes. That explains why neither *Schneider* nor *Afroyim* mentioned *Costello*. And that explains why *Costello* still controls.

We appreciate the government's argument that developments since *Costello* have undermined some of its reasoning. But revisiting the persuasiveness of Supreme Court decisions

is a task for the Justices themselves, not lower court judges, particularly when a precedent interprets a statute, not the Constitution. *See Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015).

Nothing about our disposition today changes the reality that Gonzalez, now as a legal permanent resident, must continue to abide by the law or risk deportation. *See* 8 U.S.C. § 1227(a)(1)–(7). Should he fail to meet those demands, nothing stops the government from pursuing his removal then.

We grant the petition for review, vacate the order of removal, and remand for further proceedings consistent with this opinion.

————————————

## CONCURRENCE

————————————

THAPAR, Circuit Judge, concurring.   Elfido Gonzalez Castillo became a naturalized United States citizen by defrauding the government.  Weeks later, he was convicted of sexually molesting a six-year-old child.  The government eventually discovered Castillo's immigration fraud and secured a court order revoking his certificate of naturalization.  As a result of Castillo's de-naturalization, federal law requires courts to treat him as though he had never become a citizen at all.  8 U.S.C. § 1451(a).  And under any ordinary reading of the law, that means the government should be free to deport him.

But a Supreme Court case from 1964 prevents this court from respecting Congress's command.  In *Costello v. Immigration & Naturalization Service*, the Supreme Court declared— without analyzing the text of section 1451(a)—that the statute couldn't apply to deportation proceedings.  Why?  Because of an "absence of specific legislative history" saying it should.

*Costello*'s interpretation of section 1451(a) has resulted in a series of disturbing anomalies that no rational Congress could have intended.  For one, if Castillo had possessed 31 grams of marijuana, he would be deportable.  But instead, he sexually abused a young girl for seven years, so he isn't.  For another, *Costello* rewards immigration fraud.  With the relation-back provision inapplicable, Castillo has insulated himself from deportation by defrauding the United States.  That is absurd.

*Costello* is ripe for reconsideration by the Supreme Court, which has disavowed the bygone era of ignoring a statute's plain text.  Until then, the Constitution requires me to follow this controlling precedent.  For that reason, I reluctantly concur.

## I.

Elfido Gonzalez Castillo, a native of Mexico, illegally entered the United States in 1981. He proceeded to commit horrifying sexual crimes against his niece, who was just six years old when he began abusing her.  According to a Maryland grand jury, Castillo anally raped his niece,

digitally penetrated her, groped her, and committed other appalling forms of abuse against her over seven years. In July 2009, Maryland prosecutors charged Castillo with seven counts of sexual abuse.

Just months later, Castillo became a naturalized United States citizen. How could he possibly win the treasured privilege of United States citizenship just months after he was arrested for sexually abusing a child? Fraud. At two interviews during his pre-trial release, Castillo lied to immigration officers by saying he hadn't been arrested for anything but a DUI and a fake ID charge. Based on these lies, Castillo obtained citizenship. He took advantage of the government's willingness to let him apply for citizenship even though he first came to the United States illegally and even though he had two prior arrests. And then weeks later, Castillo admitted to being a child abuser.

The government eventually discovered Castillo's fraud. It asked a Maryland federal court to strip Castillo of his citizenship. The court granted that request. It revoked Castillo's certificate of naturalization and restored him to his status as an alien.

II.

With Castillo de-naturalized, the Department of Homeland Security launched deportation proceedings against him. The government relied on 8 U.S.C. § 1227(a)(2)(E). That statute provides for the deportation of "[a]ny alien who . . . is convicted of a crime of . . . child abuse." But Castillo argues that this statute doesn't apply to him, since he wasn't an alien when he was convicted of child abuse. Rather, he says he was a citizen—albeit a fraudulent one.

Although Castillo's argument has some force at first blush, section 1227 can't be understood in isolation. In a separate provision, Congress has required courts to treat Castillo as though he had never been a citizen. Section 1451(a) provides that when an alien like Castillo procures a certificate of naturalization by fraud, and that certificate of naturalization is later revoked, then the revocation of citizenship "shall be effective as of the original date" of the naturalization order. Under this "relation-back" provision, Castillo's naturalization never happened. The law treats his naturalization as void from the beginning, since the revocation of his naturalization certificate is "effective as of" the date he originally got it. 8 U.S.C. § 1451(a).

If this court were allowed to apply the relation-back statute, this would be an easy case. Castillo would be deportable, since the law would treat him as an "alien" at the time he was convicted of child abuse. *See id.* § 1227(a)(2)(E)(i).

### III.

But we can't apply the relation-back provision. Decades ago, the Supreme Court determined that the relation-back statute doesn't apply in deportation proceedings. *Costello v. Immigr. & Naturalization Serv.*, 376 U.S. 120, 130 (1964). In doing so, the Court ignored the relation-back statute's clear text. Why? Because it couldn't find legislative history to confirm that the statute applies to deportations.

*Costello* is a relic of a bygone era of statutory interpretation—a time when the Court felt free to override the policies that Congress enacted into law. And it has created serious anomalies in our country's immigration system. *Costello* produced an irrational scheme that treats child molesters more favorably than drug users and children claiming derivative citizenship. It also allows criminals like Castillo to benefit from defrauding the government on their naturalization applications. *See id.* at 135 (White, J., dissenting). Because of its flawed legal analysis and the illogical results it has produced, *Costello* is ripe for reconsideration.

### A.

To understand *Costello*'s error, "start where we always do: with the text of the statute." *Van Buren v. United States*, 593 U.S. 374, 381 (2021). Section 1451(a) addresses what happens when an alien becomes a naturalized citizen through fraud. In that case, federal prosecutors have a "duty" to sue "for the purpose of revoking and setting aside" the certificate of naturalization that allowed the alien to become a citizen. 8 U.S.C. § 1451(a). After a court revokes the certificate of naturalization, the revocation is "effective *as of the original date of the order and certificate*." *Id.* (emphasis added). So when an alien's fraudulently obtained naturalization certificate is revoked, the law treats the certificate as though it never existed in the first place. The certificate's revocation is "effective as of" the date it first issued—meaning that the alien never became a citizen at all. In legal parlance, the revocation "relates back" to the date it first issued. For that reason, 8 U.S.C. § 1451(a) is sometimes called the "relation-back" provision.

The statute's text is clear.  It doesn't make any exceptions for aliens who are about to be deported.  And it doesn't give judges discretion to choose when an illegal alien should get a pass for his fraud.

Congress enacted the relation-back statute in 1952.  *See* Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 340(a), 66 Stat. 163, 260 (1952).  But even before then, courts had held that if a certificate of naturalization is cancelled because of fraud, "the purported naturalization is a nullity."  *Battaglino v. Marshall*, 172 F.2d 979, 981 (2d Cir. 1949).  Fraud makes the naturalization "void" from the moment of the certificate's creation.  *Id.*  A void certificate can confer "no rights whatever" upon the alien who procured it.  *Rosenberg v. United States*, 60 F.2d 475, 476 (3d Cir. 1932); *see also Johannessen v. United States*, 225 U.S. 227, 240–41 (1912) (explaining that when an alien obtains a naturalization certificate on the basis of fraud, "he takes nothing by his paper grant" (quoting *United States v. Spohrer*, 175 F. 440, 442 (D.N.J. 1910))).

The Second Circuit had applied this principle in the deportation context, holding that a citizen's subsequent denaturalization meant that he could be deported for a crime committed while he was a nominal citizen, since he was really an alien when he committed the crime. *United States ex rel. Eichenlaub v. Watkins*, 167 F.2d 659, 660 (2d Cir. 1948), *aff'd on other grounds by United States ex rel. Eichenlaub v. Shaughnessy*, 338 U.S. 521 (1950).

So the "relation back" theory wasn't new when Congress codified it in 1952.  Courts had already been developing it on their own.  And those cases set forth categorical reasoning:  when a privilege like naturalization is procured by fraud, it never becomes effective.  That principle doesn't allow courts to void naturalizations for some purposes but not others.  Through the clear text of the relation-back provision, Congress enacted that principle into law.  *Cf.* Antonin Scalia & Bryan A. Garner, *Reading Law* 318 (2012).

B.

Against this backdrop, the Supreme Court considered the relation-back provision in 1964. The case concerned mob boss Frank Costello, who became a naturalized American citizen in 1925.  *Costello*, 376 U.S. at 121; *see also Frank Costello Dies of Coronary at 82*, N.Y. Times

(Feb. 19, 1973), https://www.nytimes.com/1973/02/19/archives/frank-costello-dies-of-coronary-at-82-underworld-leader-frank.html. Costello was convicted of crimes in 1954, and a few years later, his citizenship was revoked on the ground that he had procured it by fraud. *Costello*, 376 U.S. at 121. Costello had told immigration authorities that his profession was "real estate," when in reality, he was "a largescale bootlegger." *Costello v. United States*, 365 U.S. 265, 272 (1961).

After Costello was denaturalized, the government sought to deport him. It invoked a statute that required the deportation of any "alien in the United States" who "is convicted of two crimes involving moral turpitude." *Costello*, 376 U.S. at 121. But there was a problem: Because the statute applied only to "an alien . . . who . . . is convicted of two crimes," Costello needed to be an alien *at the time of his convictions* to qualify for deportation under the statute. *Id.* at 123–29. And Costello committed his crimes after he had obtained a certificate of naturalization.

Enter the relation-back provision. The government argued that, under that statute, Costello *was* an alien when he committed his crimes. *Id.* at 128–29. Even though he had been naturalized in 1925 (decades before his convictions), his naturalization was a nullity, because he had procured it by fraud. The relation-back provision made the cancellation of Costello's naturalization "'effective' as of 1925," meaning that he was "an alien as a matter of law at the time of his convictions in 1954." *Id.* at 129. In the government's view, that made Costello deportable. *Id.*

If the Court had applied the plain text of the relation-back provision, it would have agreed with the government. As we've already seen, the statute's plain text, as well as the backdrop of caselaw against which it was enacted, shows that an alien who procures naturalization by fraud never becomes a citizen at all. Justice White said just that in dissent: "It is therefore useless to talk about whether [section 1227] makes an exception for aliens who were citizens when convicted because [section 1451] makes clear that in Congress' view they were always aliens." *Id.* at 140 (White, J., dissenting).

But the Court refused to follow Justice White's lead and apply the plain text of the statute. Instead, the Court relied on legislative history—or rather, an *absence* of legislative history—to make the relation-back provision inapplicable to deportation cases. With just a passing reference to the statutory text, the Court declared that it had found "nothing in the language of [section 1451] and not a single indication in the copious legislative history of the 1952 Act" to show that Congress wanted the relation-back theory to apply in the deportation context. *Id.* at 129. And "in the absence of specific legislative history," the Court was unwilling to apply the relation-back theory to Costello's case. *Id.* at 130.

To avoid simply erasing a duly enacted federal law from the books, the Court grafted onto it an atextual distinction. The relation-back statute could be used to determine rights of "derivative citizenship." For example, the statute could apply to strip an alien's child of citizenship that he obtained thanks to his father's fraudulently procured naturalization certificate. But it couldn't be used to deport an alien who committed crimes during his stint as a fraudulent citizen. *Id.* at 129–30.

This type of statutory interpretation is the product of a bygone era in which courts often made "no distinction between words in the text of a statute and words in its legislative history." Antonin Scalia, *A Matter of Interpretation* 31 (1997). Today, courts place primacy on the text. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). And courts now recognize that when we brush aside statutory text, we arrogate power not granted to us in the Constitution.

Of course, *Costello* was from a different era. So it is not surprising that the opinion contains some suggestions that the Court's interpretation of the relation-back provision might have been driven by disagreements with Congressional policy. Indeed, *Costello* declared that the relation-back concept that Congress enacted into law "is a legal fiction at best." 376 U.S. at 130. Never mind that the doctrine has its origins in the "very ancient" rule that public grants procured by fraud are void. *See Johannessen*, 225 U.S. at 238. Then, *Costello* asserted that when dealing with deportation (which the Court viewed as a severe penalty, akin to "banishment or exile"), courts should "eschew technicalities and fictions" and "deal instead with realities." 376 U.S. at 131. To the Court, that meant Costello's convictions "occurred when he was a naturalized

citizen"—despite Congress's determination to the contrary. *Id.* at 131–32. By condemning Congress's policy choice as a "fiction at best," the Court felt free to disregard it.

The *Costello* Court also misconstrued the cases that courts decided before 1952, when Congress enacted the relation-back provision. *Costello* asserted that Congress intended to "codify existing case law." *Id.* at 129. But "[s]everal cases before 1952" held that "an order of denaturalization made the original naturalization a nullity." *Id.* Those cases made no distinction between deportation and other contexts like derivative-citizenship proceedings. In fact, the Second Circuit expressly held that the judicially developed relation-back theory applied in deportation cases. *Id.* at 129–30. So if Congress intended to codify existing caselaw, it intended to make the relation-back statute applicable to deportation cases.

Nevertheless, *Costello* interpreted the caselaw to suggest that the relation-back doctrine could not apply in deportation cases. It read *Eichenlaub* as having "pointedly declined to adopt the Second Circuit's reasoning." *Id.* at 130. But that's not accurate. The *Eichenlaub* Court articulated the relation-back theory but didn't opine on its merits, since the Court had a "simpler and equally complete solution" for affirming the deportation of the aliens before it in that case. 338 U.S. at 529–30. *Costello* also claimed support from a Sixth Circuit decision that refused to apply the judicially developed relation-back doctrine in the deportation context. 376 U.S. at 130 (citing *United States ex rel. Brancato v. Lehmann*, 239 F.2d 663, 666–67 (6th Cir. 1956)). But the *Brancato* court didn't discuss the relation-back statute at all, and thus provides no help. 239 F.2d at 666–67.[1]

## C.

It should be clear by now that *Costello* is ripe for reconsideration for the above reasons alone. But I would add one more: The decision has proven unworkable in practice. *Costello* produced three serious anomalies that a rational Congress never would have approved.

---

[1]Given the lack of reasoning supporting the Court's decision, one might wonder how it reached this result. Perhaps the Court's result becomes less mystifying when one considers that Costello's lawyer was Edward Bennett Williams. By 1964, "[p]eople in deep trouble turned to Williams because of his reputation as a miracle worker who could make the guilty go free." Evan Thomas, *The Man to See: Edward Bennett Williams: Ultimate Insider; Legendary Trial Lawyer* 14 (1991). Williams's skill might not have been the sole reason for Costello's victory, but it certainly didn't hurt.

First, with the relation-back provision nullified, the deportation laws now make arbitrary distinctions between different types of criminals, depending on the verb tense of the particular statute authorizing their deportation.

Consider 8 U.S.C. § 1227(a)(2)(B)(ii).  That statute provides for the deportation of any alien who "is, or at any time after admission has been, a drug abuser or addict."  Same with section 1227(a)(2)(B)(i), which makes deportable any alien who "has been convicted" of a drug possession crime, "other than a single offense" for possessing 30 grams or less of marijuana.  Note the use of the present-perfect verb form "has been."  If an alien procures citizenship by fraud, then abuses drugs, then has his citizenship cancelled, he is deportable—even with the relation-back provision erased from the books.

By contrast, the statute under which the government seeks to deport Castillo applies only to an alien who "is convicted" of a crime of sexual abuse.  That requires the conviction to have occurred while the defendant was an alien.  So if the person was convicted while he was a citizen, he can't be deported—unless the relation-back provision applies.  Of course, after *Costello,* it doesn't.

The upshot of all this:  If Castillo had abused drugs, he'd be deportable even without a conviction.  But instead he sexually molested a child for seven years, so he's not deportable.  That is absurd.  No rational Congress would have treated a child molester more favorably than a drug user.  And in reality, Congress did no such thing.  The relation-back provision ensures that an alien who procured his naturalization by fraud wouldn't be able to evade deportation just because he committed crimes during his time as a fraudulent citizen.  Only when the relation-back provision is nullified does this drug-abuser-versus-child molester absurdity result.

Second, under *Costello*, the relation-back provision ensnares people who never committed any fraud or crimes—like the children of illegal immigrants—but doesn't authorize the deportation of illegal aliens who commit crimes during their time as fraudulent citizens.  Recall that *Costello* avoided a complete wipeout of the relation-back statute by drawing an arbitrary distinction:  the statute could apply "for the purpose of determining rights of derivative citizenship," but not for purposes of determining whether an alien is deportable.  376 U.S. at 129.

To understand what the Court meant by "determining rights of derivative citizenship," an example is helpful.  Antonio Battaglino, a native of Italy, moved to the United States and obtained a certificate of naturalization in 1893.  *Battaglino v. Marshall*, 172 F.2d 979, 980 (2d Cir. 1949).  He went back to Italy and had a son.  *Id.*  This son obtained American citizenship under a statute granting that privilege to any foreign-born applicant whose father was a United States citizen at the time of the applicant's birth.  *Id.* at 981.  Then, in 1925—*after* the son had obtained citizenship—his father's citizenship was revoked.  *Id.* at 980.  The father had procured his citizenship by fraud.  *Id.*  Under the relation-back theory, the father never became a citizen at all.

The question for the court:  Could the relation-back theory be used to strip the son of his citizenship?  *Id.* at 981.  If the relation-back theory made the father's citizenship a nullity for *all* purposes—including for purposes of determining the son's claim of derivative citizenship—then the son's citizenship was a nullity as well, since it was "wholly dependent upon the fact of his father's citizenship at the date of his birth."  *Id.*  But if the relation-back theory didn't apply in this context, then the son's citizenship was valid, since he obtained it between 1893 (the year his father fraudulently obtained citizenship) and 1925 (the year his father's certificate was cancelled).  He would have obtained citizenship during the time when his father was a nominal citizen.

The Court held that the relation-back theory applied against the son.  *Id.*  The law treated the father as if he had been an alien from the beginning, even for purposes of determining whether his son's claim of citizenship was valid.  Thus, the father "never became a citizen," and his son "never became one either"—even though the son had never committed any crimes and had been living in the United States for decades without the slightest reason to think that he wasn't a citizen.  *Id.*

This is the "derivative citizenship" context for which *Costello* approved the use of the relation-back statute.  Thus, according to the *Costello* majority's logic, Congress enacted 8 U.S.C. § 1451(a) to punish children who never committed any crime or fraud, but not child molesters like Castillo who commit immigration fraud and heinous sexual crimes.  In other words, Castillo's citizenship was a nullity for everything but the crimes he committed.

That makes no sense.   Although the plain text of the relation-back statute does embrace derivative-citizenship cases like *Battaglino*, it assuredly does not mean to *exempt* criminal aliens who procured their citizenship by fraud.

Third, suppose that, instead of committing fraud, Castillo had truthfully informed the immigration authorities that he had been arrested for sexually molesting a child.  He never would have been naturalized.  And after his subsequent guilty plea, he would have been deportable under the very same statute that the government invokes today.  But under *Costello*, Castillo's fraud "becomes his ready and effective shield."  *Costello*, 376 U.S. at 135 (White, J., dissenting).  Without the relation-back provision, the statute the government relies on doesn't authorize Castillo's deportation.  *See* 8 U.S.C. § 1227(a)(2)(E).

Again, this is not a result that a rational Congress could have intended.  The law typically doesn't reward people with unclean hands.  The classic remedy for fraud is making the victim whole, as if the fraud had never happened.  But under *Costello*, this court can't give relief to the American people by deporting Castillo.

D.

So with *Costello* still on the books, what should judges do?  For lower courts like this one, the task is straightforward:  We are bound by our judicial oaths to apply *Costello*.  Article III of the Constitution sets up a "hierarchical system with 'one supreme Court.'"  *Ramos v. Louisiana*, 590 U.S. 83, 124 n.5 (2020) (Kavanaugh, J., concurring in part) (quoting U.S. Const. art. III, § 1).  Under this constitutional scheme, "vertical *stare decisis* is absolute."  *Id.*

That is why thoughtful jurists across the country have applied *Costello*, regardless of any misgivings.  Majority Op. (Sutton, C.J.); *Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1156 (11th Cir. 2021) (William Pryor, C.J.) (acknowledging that, as "binding precedent," *Costello* "forecloses treating Hylton's denaturalization as retroactive for removal purposes"); *Okpala v. Whitaker*, 908 F.3d 965, 972 (5th Cir. 2018) (Jones, J., concurring) ("Because the Supreme Court wrote broadly in *Costello*, it imposed this illogical result.").

And so while I may believe *Costello* is misguided, I am duty-bound to follow it. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997). Thus, I concur.